J. G. WILSON, *Clerk.*

---

A. N. ARMSTRONG *et al. v.* ESTATE OF P. M. ARMSTRONG.

*Adjourned from Yamhill.*

A law, passed after the death of an intestate, but before distribution of his estate, controls such distribution.

PLEASANT M. ARMSTRONG died in 1853, leaving a large amount of personal property, a widow, and no children. A. N. Armstrong and others, brothers and sisters of the deceased, claimed equal shares with the widow in said property; but the Probate Court of Yamhill County, upon the final settlement of the estate, awarded all that remained, after the payment of debts and expenses, to the widow, Jane Armstrong.. A. N. Armstrong, for himself and other claimants, appealed from this decree to the District Court of said county, and the cause has been adjourned into this court for final adjudication.

*Pratt & Logan,* for appellants.

*Campbell & Grover,* for appellee.

WILLIAMS, C. J.   Chapter twelve, page 382, of the *Oregon Statutes,* provides, in effect, " that when a married man shall die intestate, and without issue, his widow shall be entitled to all the personal estate that remains, after the payment of debts and expenses, as prescribed by law."   Section three of said chapter is as follows :  " When, as doubts have arisen as to what has been the law in relation to the distribution of the personal estate in this territory, the rule of distribution established by this chapter is hereby declared to have been the law of the land since the first session of the Legislative Assembly of this territory, begun and held at Oregon City, on the 16th day of July, A. D. 1849 : *Provided,* nothing in this section contained shall be so construed as to disturb the settlement of any estate whereof administration is complete and distribution made."

All of said chapter took effect on the 1st day of May, 1854 ; and although it undertakes to declare what the law had been prior to that date, it only amounts to a rule for the distribution of the estates to be settled and distributed after the enactment of the statute.   No settlement or distribution of the estate in question took place till December, 1854 ; and the only question, therefore, to be decided in this case is, whether such estate should have been distributed in accordance with the act of 1854, above cited, as contended by the widow, or, whether it should have been distributed in accordance with the law in force at the time of Armstrong's death, as contended by appellants.

All parties agree, that at the time of Armstrong's death there was no legislative enactment for the distribution of estates in this territory, and much confusion has consequently arisen as to the common law rights of the parties ; but as we feel bound to apply the statute of 1854 to the estate in suit, any opinion as to the state of the law prior to that time will

Armstrong v. Armstrong.

be unnecessary, and out of the case.   We hold that after the payment of the debts and expenses, as provided by law, Mrs. Armstrong is entitled to all that remains of the personal estate of her deceased husband, and this judgment, we think, is supported by principle as well as authority.   Independent of any rule of law, or regulation of society upon the subject, there seems to be no good reason why an intestate's effects should be taken from the widow and given to the brothers and sisters of the deceased.   Nothing but the naked ties of consanguinity can be urged in favor of their right.   None of the estate is inherited from or through them.   None of it is accumulated by their diligence or labor.   Mere relationship, however, is not generally the only ground of a widow's claim.   Marriage not only makes the parties thereto one in name, but creates a community of duties and interests, so that the estate of a married man deceased is oftener than otherwise the joint fruit of the united industry and care of both husband and wife.   Natural equity, therefore, acting upon a general rule in the distribution of an estate, would not prefer the collateral relations by blood to the widow of the deceased; from which it will follow, that all pretence of right by appellants to the property in dispute is derived from, and dependent upon, the will of the law-making power.   Manifestly, the law-giver may change or make his legislative will at any time before it takes effect, or becomes executed, and of course any right, growing out of it, and dependent upon such will for its existence, must be correspondingly changed or revoked.   Now, it would seem obvious to any one, that the will of the law-maker, relative to the distribution of the property, does not take effect until the distribution is made; and, upon this ground, it may be safely affirmed, that the law of 1854, before quoted, though enacted after Armstrong's death, was applicable to the distribution of his estate made after its enactment.   Appellants, however, contend, that the title to a portion of their deceased brother's estate vested in them at the time of his death, so that the legislature had no power, by subsequent act, to divert any and give it to another.   Now, if it be true that said property did

vest as claimed, then it is also true that said statute cannot operate so as to give it to the widow, for the organic act provides that no man shall be arbitrarily deprived of his property. But it is not true that the title to any part of Armstrong's estate vested in the appellants at the time of his death; and, therefore, it is not exempt from the operation of the said statute upon that ground. Appellants cannot show one of the ordinary marks or signs of title to any part of this estate. They have no right of possession—no interest that can be taken for their debts—nothing that can be applied to their use. They may have an expectancy dependent upon a contingency, but this is far from title. All the personal property of an estate is vested in the administrator. He is entitled to its possession as against all other persons, and may sell it, and convey a perfect title; no one else is recognised as owner by the law. But it is said the administrator holds the estate in trust, and this position is correct, but of no avail to appellants. When a man dies intestate, the supreme authority of the law takes his personal estate, and gives it away according to its absolute will and pleasure. It may give all to the father, brother, widow, or any other relative of the deceased, or may make division among any or all of them. Its high behests upon the subject it can make or unmake, as its views of policy and right may change; and no one can defeat the constitutional exercise of this arbitrary power. But the law must of necessity have an agent to execute its will. Its agent as to the effects of the deceased persons is an administrator. He holds the estate in trust, not for any particular person or persons, but to be disposed of as the law shall direct, and is made responsible for what he may receive in his fiduciary capacity to those whom the law authorizes to call him to account. Now, when an administrator goes to distribute an estate, he must look exclusively to the law for directions, not those directions which it gave before his appointment, or at any prior time, but to such directions as it gives when the distribution is made. Admitting, what is a matter of doubt, that the law at the death of Armstrong promised to give a portion of his estate to ap-

pellants, the right of the law to make that promise before distribution is clear, upon the well-known principle that the mere promise to give a thing does not, before delivery, bind the promissor, or confer any right upon the promisee.

But it is argued and not denied, that the law cannot be so changed after a man's death, as to exempt his estate from the payment of those debts created in his lifetime; and some effort has been made to apply that doctrine to this case. Appellants, however, cannot place themselves on the same footing with creditors. When two men make a contract, it is implied, if not expressed, that not only they, but their respective estates, shall be bound for its fulfilment. Creditors claim upon this ground, and any law, therefore, declaring that a decedent's estate shall not be liable for his debts, is a law impairing the obligation of contracts, and void. (*Statutes of Oregon, p.* 25, *Organic Act.*)

Appellants do not pretend to claim any part of the estate, in question, by virtue of a contract. They claim by operation of law; but before their claim could be allowed, the law had ceased to operate in their favor. Appellants, we think, had no vested rights in the estate of their deceased brother, according to the authorities. Williams, in his work on *Executors, p.* 790, says, that " an executor or administrator has the same property in the personal effects of an estate as the deceased had when living, and has the same power to bring actions in reference thereto."

" On the death of the testator or intestate, his executors or administrators, in point of law, are the owners of the goods which belonged to him, and may declare for them as their own, when damaged by another." (*Hollis* v. *Smith,* 10 *East.* 295.)

" It is a general rule of law and equity, that an executor or administrator has an absolute power of disposal over the whole personal effects of his testator or intestate, and that they cannot be followed by creditors or legatees into the hands of the alienee." ( *Whale* v. *Booth,* 4 *T. R.* 625 ; *Nugent* v. *Gifford,* 1 *Atk.* 463.)

Armstrong *v.* Armstrong.

" After the death of the deceased his personal property may be considered in abeyance until administration is granted; and is then vested in the administrator, by relation, to the time of the death." (*Jewel* v. *Smith*, 12 *Mass.* 309 ; *Lawrence* v. *Wright*, 23 *Pick.* 128.) In the case of *Carpenter* v. *Commonwealth of Pennsylvania*, 17 *How.* 456, the Supreme Court of the United States assert the doctrine here maintained. In 1826 the State of Pennsylvania passed a law by which, under certain circumstances, " all inheritance, being within that commonwealth," should be subject to a tax. William Short, a citizen of Pennsylvania, died in 1849, leaving certain personal property in New-York to citizens in that State. In 1850 the legislature of Pennsylvania passed an act, declaring that the prior act of 1826 " should be so construed as to relate to all persons who have been, at the time of their decease, or now may be, domiciled within this commonwealth, as well as to estates." The Supreme Court held, that the title to the property in New-York did not vest in the devisees there in 1849, but belonged to the executor in Pennsylvania till distribution made, and was, therefore, taxable by virtue of the act of 1850. If personal effects do not vest in devisees under a will upon the death of a testator, they certainly cannot vest in heirs upon the death of an intestate. We conclude, in every point of view, that the act of our Assembly, of 1854, before cited, was and is applicable to the distribution of all estates since its passage, without regard to the time of the intestate's decease, and therefore affirm the judgment of the Probate Court.

Judgment affirmed.

OLNEY, J., did not sit in this case.