Argued June 15; affirmed September 27, 1938

IN RE McLEOD'S ESTATE

MacKENZIE ET AL. *v.* GRAHAM ET AL.

(82 P. (2d) 884)

In Banc.

*P. J. Gallagher*, of Portland (Martin P. Gallagher, of Ontario, on the brief), for appellants.

*C. M. Crandall*, of Vale, for respondents.

LUSK, J.   No contention is made here about the real estate, the title to which is conceded to have vested in Christina MacKenzie as next of kin immediately upon the death of Donald McLeod, and upon her death to have passed to her heirs. The only controversy relates to the personal property, and the question is whether on the death of Christina MacKenzie the personal estate passed to her personal representative or to those, including the appellants, who at the time of distribution of the personal estate stand in the relation of next of kin to the decedent.   Otherwise stated, the question is whether the next of kin are to be ascertained as of the date of the death of Donald McLeod or as of the date of the distribution of the personal estate.

In support of their position the appellants have argued that whereas real estate, under our statute, descends directly to the heir on the death of the ancestor, that is not true of personal property, title to which vests in the administrator upon his appointment, and so remains until distribution. The heir, it is said, derives his title to personalty through the administrator, and until a decree of distribution has been made and possession acquired he has a mere expectancy, and no title or right which on his death before distribution could pass to his heirs. Hence, the personalty must go to those who at the time of distribution are found to be occupying the position of next of kin.

It may be observed at once that this is a proposition inconsistent with the statute governing the distribution of personal property in this state. By § 10-101, Oregon Code 1930, it is provided that if an intestate shall leave no lineal descendants, neither husband nor wife, nor father, mother, brother nor sister, his real property ''shall descend to his or her next of kin in equal degree, * * *''

By § 10-102, Oregon Code 1930, it is provided that the residue of the personal property, after payment of allowances to the widow and minor children and payment of debts and expenses of administration, ''shall be distributed among the persons who would be entitled to the real property of the intestate, as provided in this act, and in the like proportion or share, except as is herein otherwise provided''. The exception is not material here.

The persons entitled to the real property of Donald McLeod, deceased, are concededly the heirs of his next of kin, Christina MacKenzie, deceased. By the command of the statute the same persons to whom the real estate passed are entitled to the residue of the personal

property, and this court has no authority to declare that it shall go to someone else. The plain words of the statute, therefore, refute the claims of the appellants.

We have not been referred to any authority, either decided case or text writer, which directly supports the appellants' contention. The precedents which have come to our attention and the texts are the other way. In 3 Woerner, American Law of Administration, (3d Ed.) 1932, § 565, the author says:

"It follows from the doctrine of the vesting of the distributee's interest at the time of the intestate's death that if a person entitled to distribution die before distribution is made, or his legacy paid to him, his share will go to his legal representative and not to those who, by reason of his death, have become the next of kin of the intestate".

The case of *Kingsbury v. Scovill's Administrator*, 26 Conn. 349, is squarely on the point. The court in that case held that if the widow of an intestate dies before a distribution of personal estate of her deceased husband is made, her personal representatives will be entitled to the distributive share of such estate which she would have been entitled to receive if living at the time of distribution. We quote from the opinion at page 352 of the report:

"The widow of Mr. Scovill, who died intestate, having died after administration granted on his estate and before distribution, the question is, whether her personal representatives are entitled to the distributive part of his personal estate to which she would have been entitled if she had been living at the time of the distribution, or whether it belongs to his children. We are clearly of the opinion that her right to that part of his estate was a present vested interest on his death, which was not defeated by her subsequent death, and that it therefore belongs to her representatives. An

equitable right to it vested in her immediately on the decease of her husband, and on the appointment of an administrator on his estate the legal title to it vested in him by relation from the time of the intestate's decease, to the end that it should ultimately be distributed to those who, under the statute of distributions, were entitled to it; and, in the meantime, he held it as trustee for them, subject to the payment of the debts and charges against it; and the distribution when made, relates back to the original right. The title or right of the distributees is not derived from the distribution, which is only an ascertainment and setting out to them in severalty of the shares of the estate to which they had respectively already become entitled by the statute.''

*Nickerson v. Bowly*, 8 Metc. (Mass.) 424, opinion by Shaw, C. J., holds likewise under a similar state of facts, as do *Thompson v. Thomas*, 30 Miss. 152, and *Grant v. Bodwell*, 78 Me. 460 (7 Atl. 12). In *McMullen v. Brazelton*, 81 Ala. 442 (1 So. 778), it is held that where one of the distributees of a decedent's estate dies before the final settlement and distribution, his personal representative is a necessary party to the proceedings on final settlement. See also, *Purcelly v. Carter*, 45 Ark. 299, *George v. Elms*, 46 Ark. 260, *Puckett v. James*, 2 Humph. (Tenn.) 565, and *Bluett v. Executors of Nicholson*, 1 Fla. 431.

The assertion is made that decisions such as those we have just cited are not applicable here because they were based upon statutes which provide that personal property shall descend to the heirs in the same manner as real estate. But this assumption is without foundation, at least with respect to the cases in Massachusetts, Maine and Connecticut. The Massachusetts statute in effect at the time the case of *Nickerson v. Bowly*, supra, arose, provided that real estate shall ''descend'' and that personal property shall ''be applied and distrib-

uted'', the exact language of our statute: Mass. Rev. Stat. 1836, Part II, Title II, Ch. 61, § 1; Title IV, Ch. 64, § 1. The Connecticut statute at the time of the decision in *Kingsbury v. Scovill's Administrator* speaks throughout of the ''distribution'' of both real and personal property: Conn. Comp. Stat. 1854, Title XIV, Ch. 2, §§ 46 et seq. The Maine statute at the time of the decision in *Grant v. Bodwell*, supra, provided that real estate ''descends'' and personal property is ''applied and distributed'': Rev. Stat. Me. 1873, Ch. 5, § 1.

The notion that the heirs and next of kin have no right before distribution in the personal estate, but a mere expectancy which cannot be inherited, we think is erroneous. It is conceived by appellants to be a necessary deduction from the accepted doctrine that on the death of the ancestor the title to personal property passes directly to the personal representative, from whom only the title thereto can be derived: *Hadley v. Hadley*, 73 Or. 179, 182 (144 P. 80) ; *Murphy v. Tillson*, 64 Or. 558, 560 (130 P. 637).

And much emphasis is laid by the appellants on the early case of *Armstrong v. Armstrong*, 1 Or. 207 (75 Am. Dec. 555), decided by the Supreme Court of the United States for the Territory of Oregon in 1855. It was there held that a law passed after the death of the intestate, but before distribution of his personal estate, controlled the distribution. Pleasant M. Armstrong died in 1853. The law became effective in May, 1854. Armstrong's entire estate was claimed by his widow. His brothers and sisters claimed equal shares with the widow. At the time of Armstrong's death there was no legislative enactment on the subject, and confusion had arisen as to the common law rights of the parties. The court did not determine

their common law rights, but held that the statute giving the personal estate to the widow controlled, since the estate had not yet been distributed. This conclusion was founded upon the premise that the administrator took the title to the estate and that the heirs had only an ''expectancy dependent upon a contingency''. From this decision the appellants argue that Christina MacKenzie, at the time of her death, had no interest in the personal estate herein involved, which would pass to her personal representative.

The Armstrong case has never been cited by this court so far as we know. Elsewhere it has met with an unfavorable reception. The opinion is published in 75 Am. Dec. 559 with a comment that it: ''seems to stand alone in holding that the law in force at the time of distribution controls.'' The only other case having the same question in it, which the commentator was able to find, was *Miller v. Miller*, 10 Metc. (Mass.) 393, where the holding was contrary to that in *Armstrong v. Armstrong*. In 9 R. C. L. 16, § 9, Descent and Distribution, it is said, referring to this case:

''But both on principle and authority the better rule seems to be that after the intestate's death no change can be made which will take away the rights of the heirs and distributees as of that time, or which will operate to divest an estate which has vested under the law at the time of the death.''

In 3 Woerner (3d Ed.), American Law of Administration, 1931, § 565, it is said:

''It is also an obvious general rule, that the law in force at the time of the testator's or intestate's death governs the right of the distributees, heirs, devisees, and legatees; although in one old case it was held that, since the law governing distributees does not take effect until distribution is made, the right of the distributee may be affected by legislation after the intestate's death.''

The "old case" to which the author refers is *Armstrong v. Armstrong*, and the author observes in a note to the text:

"The court seems in this case to overlook that the vesting of the right to the property, which is fixed at the death of the decedent, is the essential consideration, not the mere subsequent enjoyment of that right or distribution."

The only other case which we have found announcing a similar view is *Lewis v. Eutsler*, 4 Oh. St. 354, but there the legislation provided for the descent of the property of bastards, which theretofore had escheated to the state. And the decision went upon the view that the effect of the provisions of the act was "to operate the relinquishment (by the state) of an interest then existing, and to create a capacity in others to take it." It was expressly said, with reference to the personal property of the estate, that "the right to distribution was a vested right, and if it had belonged to a private person could not have been impaired by such subsequent legislation."

We think this is the true doctrine, abundantly supported by the authorities. And, while we are not dealing here with the question of whether a law passed after the death of an intestate controls the distribution of his personal estate, still we deem it to be our duty to overrule the Armstrong case, in so far as it holds or implies that on the death of the intestate, his heirs and distributees have a mere expectancy and no right in his personal estate.

■ At the ancient common law the title to personal property of a deceased person vested absolutely in his personal representative, and the surplus thereof, after the payment of legacies, debts, and charges of administration, belonged to the executor or administrator as

recompense for his services. It was not until the statute of 22 Car. II. that distribution of the surplus among the next of kin was compelled. This doctrine, however, no longer exists at common law and has never obtained in America. Executors or administrators in this country have always been regarded as trustees who held the title and possession of the personal estate of their decedent for the benefit of the creditors, legatees, heirs and distributees: 9 R. C. L. 79, § 75, Descent and Distribution; 18 C. J. 878, § 136, Descent and Distribution; *Thorsen v. Hooper,* 57 Or. 75, 79 (109 P. 388); *Mahon v. Harney County National Bank,* 104 Or. 323, 327 (206 P. 224); 112 Am. St. Rep. 728, note; 23 Am. Dec. 200, note; *Lewis v. Eutsler,* supra; *Blood v. Kane,* 130 N. Y. 514 (29 N. E. 994, 15 L. R. A. 490); *Moore v. Brandenburg,* 248 Ill. 232 (93 N. E. 733, 140 Am. St. Rep. 206); *Shawhan v. Long,* 26 Iowa 488, 492 (96 Am. Dec. 164); *Carr v. Hull,* 65 Ohio St. 394, 397 (62 N. E. 439, 87 Am. St. 623, 58 L. R. A. 641).

In *Thorsen v. Hooper,* supra, this court said:

"The right which the law confers upon an administrator to take and hold the possession of the goods and chattels of a decedent's estate is in the nature of a trust. Schouler's Ex. and Admrs., § 242; 11 Cur. Law, 1307; *Casto v. Murray,* 47 Or. 57 (81 Pac. 388, 883); *In re Roach's Estate,* 50 Or. 179 (92 Pac. 118.) He stands to all persons interested in the intestate's estate in the relation of a trustee, and is authorized to enforce all the rights, and is subject to all the remedies incident to an ordinary trustee: *Main v. Brown,* 72 Tex. 505 (10 S. W. 571: 13 Am. St. Rep. 823); *Holden v. Piper,* 5 Colo. App. 71 (37 Pac. 34.) He is not a trustee in the strict sense of the term, but, in the administration upon an intestate's estate, he exercises a statutory power pursuant to the orders of a probate court. He occupies such a fiduciary relation as a *quasi* trustee that, if he misapplies the assets intrusted by law to his possession,

the creditors and heirs of the decedent have a choice of remedies for their injury; may bring an action on his undertaking for a breach of its conditions, or they may pursue the fund, if they can trace and identify it: Pierce v. Holzer, 65 Mich. 263 (32 N. W. 431.)''

In *Nickerson v. Bowly*, supra, Chief Justice Shaw said:

''It is a well established rule of law, that the right to a distributive share of personal estate, under the statute of distributions, is a vested interest, vesting, in point of right, at the time of the decease of the intestate, although the persons to take, and the amount to be received, must be ascertained and determined by a decree of the probate court; which, from various causes affecting the settlement of the estate, may not be made till long afterwards.''

In 18 C. J. 879 we read:

''However, persons entitled to personal property as heirs or distributees acquire a vested equitable right immediately on the death of the intestate, and on distribution their title relates back to the intestate's death, * * * * *''

■ This is not to say that in a practical sense the interests of the heirs and distributees in personalty are not uncertain and contingent until it is ascertained that a surplus remains after the debts and expenses of administration are paid: *United States v. Jones*, 236 U. S. 106 (59 L. Ed. 488, 35 S. Ct. 261, Ann. Cas. 1916A, 316). Nevertheless, as the Supreme Court said in that case, a right does vest at the time of the death ''to demand and receive at some time in the future whatever may remain after paying the debts and expenses.''

■ It is this right which vested in Christina MacKenzie as next of kin on the death of her nephew, Donald McLeod. It is a ''right to'' or ''interest in'' per-

sonal property within the meaning of the statute governing the distribution of such property in this state (Section 10-102, Oregon Code 1930), and passed to Christina MacKenzie's personal representative at her death.

It results that the appellants are not entitled to share in the distribution of the personal estate. This conclusion, in our opinion, is in conformity with the true intent and meaning of our statutes and is compelled by the law, as it has been announced by practically all the authorities.

The decree of the circuit court is affirmed. None of the parties will recover their costs or disbursements.

RAND and KELLY, JJ., not sitting.