Ethel M. SKINNER, Appellant,

v.

Parke T. MORROW et al., Appellees.

Ethel M. SKINNER, Appellant,

v.

Marion S. LATTIN et al., Appellees
(two cases).

Court of Appeals of Kentucky.

Nov. 28, 1958.

Henry J. Burt, Jr., Louisville, for Ethel M. Skinner.

Wilbur Fields, Louisville, for appellees and cross-appellants, Marion S. Lattin, Cora Anderson, Jeanette Diemer and Marjorie Billens.

Louis H. Jull, Louisville, for appellee Citizens Fidelity Bank and Trust Co.

W. Howard Clay, Louisville, for appellees and cross-appellants G. L. Holland, M. K. Allen and Sheldon Brandenburger.

Albert F. Ziegler, Erie, Pa., for appellee and cross-appellant Albert F. Ziegler.

CULLEN, Commissioner.

We have before us appeals and cross-appeals from judgments in three actions involving the estate of R. H. Skinner, deceased.

The first action was one brought by the widow, Mrs. Ethel Skinner, by motion under CR 60.02, to set aside as void a judgment of the circuit court which had adjudicated that an alleged will of Mr. Skinner was a forgery and had set aside the probate of the will by the county court. An order was entered overruling Mrs. Skinner's motion, and she has appealed from that order.

The second action was in the nature of an appeal by Mrs. Skinner to the circuit court from a judgment of the county court settling her accounts for the period during which she had served as executrix under the will before the probate was set aside, and denying certain personal claims asserted by Mrs. Skinner against the estate. This action was consolidated in the circuit court with the third action, the nature of which will presently be stated. The judgment of the circuit court confirmed the settlement made by the county court and disallowed, as had the judgment of the county court, most of the claims asserted by Mrs. Skinner against the estate. Mrs. Skinner has appealed from the judgment on these points.

The third action was a settlement suit brought in the circuit court by the paternal heirs of Mr. Skinner against Mrs. Skinner and the Citizens Fidelity Bank and Trust Company, which had been appointed administrator of the estate after the probate of the will was set aside. Certain assignees of the interests of the maternal heirs later became parties. The judgment in this action made a determination of heirs, and rejected a claim by Mrs. Skinner that by virtue of a 1956 amendment to the Kentucky descent statute she was the sole heir. The judgment further made an allowance of fees to the administrator and its attorney, and to the attorney for the paternal heirs, and directed how these fees and the costs of administration should be apportioned against the various interests in the estate. Distribution of the estate by making payments to the various heirs "and their attorneys" also was directed by the judgment. A number of appeals and cross appeals have been taken from this judgment. We will defer discussion of them to a later point in this opinion.

█ We will discuss first Mrs. Skinner's appeal from the order overruling her motion under CR 60.02 to set aside the judgment which had invalidated the probate of Mr. Skinner's will on the ground that the will was a forgery. An appeal from the county court judgment probating the will had been taken to the circuit court by a group of persons believed at the time to be legal heirs of Mr. Skinner. They alleged in their statement of appeal that the will was a forgery, and they filed as exhibits copies of criminal court judgments in which Mrs. Skinner and an attorney employed by her had been convicted of uttering the will as a forgery. Mrs. Skinner filed an answer admitting that the will was not the will of Mr. Skinner, but alleging that the plaintiffs were not legal heirs and were not entitled to appeal from the judgment of probate. The answer named two persons who were alleged to be heirs, and who later turned out to be among the persons entitled to share in the estate. One of these named persons then joined in the statement of appeal. A summary judgment was entered setting aside the probate of the will. Approximately two years later Mrs. Skinner filed her motion under CR 60.02 to have the judgment set aside as void.

As her first ground of alleged invalidity, Mrs. Skinner asserts that the judgment was based solely upon the record of her criminal conviction of uttering a forged will, and that the court had no jurisdiction to enter the judgment without other proof that the will was forged. It is unnecessary for us to answer this contention, because of the simple fact that Mrs. Skinner's answer to the statement of appeal *admitted* that the

will was not valid. There was no need to take any proof on the question of forgery, because the pleadings made no issue. Whether the proof submitted was sufficient is immaterial, because the pleadings themselves authorized the adjudication that the will was not the will of Mr. Skinner.

Mrs. Skinner further maintains that the judgment should be held void because of various procedural irregularities, such as premature entry of the judgment, the allowance of unauthorized amendments to the pleadings, absence of necessary parties, improper substitution of parties, etc. Detailed discussion of these alleged irregularities is unnecessary; it is sufficient to say that none of them was such as would make the judgment void. A basic rule with respect to civil actions is that if the court has jurisdiction of the subject matter and the parties, its judgment, whether erroneous or not, is not void. Crawford v. Riddle, 241 Ky. 839, 45 S.W.2d 463. A judgment cannot be set aside under CR 60.02 for mere procedural irregularities. Wickliffe v. Farmers' Bank of Frankfort, 142 Ky. 35, 133 S.W. 966. Mrs. Skinner's motion here is the equivalent of a collateral attack upon the judgment, and it is a universal rule that where the jurisdiction of the court has attached, its judgment is not subject to collateral attack for irregularities of procedure, 49 C.J.S. Judgments § 431, p. 855, and it is immaterial how irregular the proceedings were, or how erroneous the judgment was, 30 Am.Jur., Judgments, sec. 863, p. 779. See also 30 Am.Jur., Judgments, sec. 692, p. 657.

It is our opinion that the court properly overruled Mrs. Skinner's motion.

We will consider next Mrs. Skinner's appeal from the judgment in the second action, with reference to the settlement of her accounts as executrix and the disallowance of her claims against the estate. Her sole contention here is that upon her appeal from the county court to the circuit court she was entitled under KRS 25.070 to a trial de novo, and that the circuit court did not grant her such a trial, but instead ruled that the county court commissioner's report of settlement was prima facie evidence sustaining the county court judgment. She maintains that KRS 25.-200, making "settlements" prima facie evidence between the parties, is not applicable to the kind of settlement here involved, and, besides, is not applicable in the case of a direct appeal from the county court judgment.

As we interpret the ruling of the circuit court, it did nothing more than place the burden of proof upon Mrs. Skinner to establish the validity of the credits she sought to have allowed and the claims she sought to have paid. This was a burden which she already had, regardless of the court's ruling, because when a claim against an estate is controverted, the burden of proof is upon the claimant, Cottrell v. Barnes' Adm'r, Ky., 90 S.W. 1048; Johnson's Adm'r v. Pigg, 242 Ky. 631, 47 S.W.2d 63, and when a personal representative seeks credit for an alleged expense of administration the burden of proof is upon him, Rose v. Ratliff's Adm'r, 237 Ky. 645, 36 S.W.2d 43.

Mrs. Skinner was given the opportunity to present proof in the circuit court, and she did introduce some evidence. However, we think the court properly held that this evidence was not sufficient to establish the credits and claims asserted. Actually, most of the asserted credits and claims were preposterous on their face, such as a claim for the amount of the attorney fees incurred by Mrs. Skinner in defending the criminal prosecution brought against her.

It is our conclusion that as respects the settlement of Mrs. Skinner's accounts and the disallowance of her claims the judgment should be affirmed.

Mrs. Skinner maintained in the proceedings below that the settlement action brought by the paternal heirs was filed prematurely, and on her appeal from the judgment as it relates to that action she continues to make this contention. The as-

signees of the interests of the maternal heirs, on their cross-appeal, make the same contention.

KRS 395.510 provides that a settlement action may not be brought by any person except the personal representative until the expiration of six months after the qualification of the representative. The administrator here qualified on September 9, 1954, and the settlement action was filed on March 9, 1955.

There are two different provisions of law in Kentucky governing the computation of time. One is CR 6.01, and the other is KRS 446.030. If the former applies here, the action was premature; if the latter applies, it was not. We find it unnecessary to determine which provision is applicable, because we think the personal representative is the only party who could raise the question of premature filing. See Farmers Nat. Bank of Danville v. First Colored Baptist Church, 277 Ky. 521, 126 S.W.2d 1130. The personal representative here did not raise any objection concerning prematurity. In any event, it would be a futile and useless thing to require this entire proceeding to be retried simply because the action may have been filed one day too soon.

It is our opinion that the lower court properly took jurisdiction of the settlement action.

Mrs. Skinner also has appealed from the judgment in the consolidated second and third actions as it concerns the determination of heirs and the allowance and apportionment of fees and costs

With respect to the determination of heirs, Mrs. Skinner contends that she should have been adjudged to be the sole heir. This is on the theory that a 1956 amendment to the statute of descent, KRS 391.010, should apply to Mr. Skinner's estate because distribution of his estate had not been made prior to the effective date of the amendment.

Mr. Skinner died in 1953. His estate consisted entirely of personalty. He left surviving him his wife and some second and third paternal and maternal cousins. Under the statute of descent then in force, Mrs. Skinner was entitled to one-half of the personalty and the remote heirs were entitled to the other one-half. Under the 1956 amendment Mrs. Skinner would take the entire estate.

In 16 Am.Jur., Descent and Distribution, sec. 15, p. 782, the law is stated to be as follows:

"There is a right to a succession to an ancestor's property after his death according to the law as it existed at the time of his death. Such right is a vested right constituting property and entitled to constitutional protection as such, and hence, any statute depriving an heir or distributee of such right, without due process of law, is unconstitutional and void. Accordingly, an estate must be distributed according to the laws of distribution in force at the time of the intestate's death. * * *"

A substantial number of cases from various jurisdictions are cited in support of this text. The only case to the contrary seems to have been Armstrong v. Armstrong's Estate, 1 Or. 207, 75 Am.Dec. 555, in which it was held that, as regards personalty, the law existing at the time of distribution controls. However, the Armstrong case has been overruled. In re McLeod's Estate, 159 Or. 687, 82 P.2d 884.

It is our opinion that the lower court properly held that the distribution of the Skinner estate must be in accordance with the laws of descent in effect at the time of Mr. Skinner's death.

We will next consider the questions raised concerning the amount of fees awarded the administrator and its attorney, and the directions of the court as to how these fees and the costs of litigation should be apportioned against the various interests in the estate.

The value of the estate is around $190,-000. The judgment awarded the administrator a fee of $11,500, and its attorney a fee of $8,500. It directed that these fees, and the costs of the actions, be charged as follows: Sixty percent to the share of Mrs. Skinner, twenty percent to the share of the maternal heirs, and twenty percent to the share of the paternal heirs.

Mrs. Skinner has appealed, contending that the fees are excessive, and that her share of the estate should not have been charged with more than fifty percent of the fees and costs. The assignees of the interests of the maternal heirs have cross-appealed, also asserting that the administrator's fee is excessive. The paternal heirs likewise have cross-appealed, maintaining that all of the costs should have been charged against Mrs. Skinner's share of the estate.

■■■ Under KRS 395.150 it is provided that the compensation of an administrator shall not exceed five percent of the value of the personal estate, plus five percent of the income collected for the estate; however, the court may make an additional allowance for unusual or extraordinary services. The five percent fee is a *maximum* for ordinary services, and a smaller allowance may be made where the administrator merely preserves the estate, Douglas' Adm'r v. Douglas' Ex'r, 243 Ky. 321, 48 S.W.2d 11; or where the estate is or could have been distributed in kind, Stratton v. Wilson, 170 Ky. 61, 185 S.W. 522; Maynard v. Maynard's Adm'r, 251 Ky. 246, 64 S.W.2d 567, 91 A.L.R. 697.

■■■ Here, the estate consists in the main part of securities. Some of the securities are to be distributed in kind to the heirs. No extraordinary trouble or effort has been involved in the handling of the assets. It is true that the estate has been involved in considerable litigation, but this did not involve extra work on the part of the administrator so much as it did on the part of the administrator's attorney.

Considering the fact that aside from the litigation much of which concerned only a somewhat private battle between the paternal heirs and Mrs. Skinner, there was little required in the way of administration of the assets, it is our opinion that a fee of five percent, for all services of the administrator, is adequate and ample. Accordingly, the judgment is erroneous to the extent it allows a fee to the administrator in excess of five percent.

■■■ The fee allowed to the attorney for the administrator is liberal, but we are not convinced that it is excessive. It is true, as stated by the trial judge in his findings and conclusions, that much of the litigation was needless and useless, and that an unnecessarily large and involved record was built up. However, this was not the fault of the administrator or its attorney. The litigation was prosecuted with exceeding vigor by the attorney for the paternal heirs, and it was necessary that the administrator participate in the proceedings through its attorney. The administrator had the duty to see that the estate was properly administered and distributed, and could not simply stand back and let the heirs conduct the litigation to suit themselves. It is unfortunate that the litigation reached such proportions, but the fact remains that there was this litigation to which the administrator's attorney was required to devote considerable attention and effort. It is our opinion that the fee allowed him must be upheld. See Panke v. Louisville Trust Co., 303 Ky. 579, 198 S.W.2d 313.

■■■ We come next to the question of whether the fees of the administrator and its attorney, and the costs, were properly apportioned. It appears that the fees and costs were attributable in a substantial part to the unwarranted claims asserted by the widow, and her contention that she was entitled to the entire estate. There is authority for the proposition that one who involves an estate in unnecessary litigation should pay the attorney fees and

costs incurred by the personal representative by reason thereof. See Russell and Merritt, Kentucky Practice—Probate Practice and Procedure, sec. 975, p. 114. We think the court was justified in assessing sixty percent of the fees and costs against the widow's share of the estate (this being only ten percent more than she would have been required to pay in any event, since she has a fifty percent share in the estate). However, we cannot agree with the cross-appellants that all of the costs and fees should have been assessed against her share. Some of the widow's claims and contentions were not without merit, and as we have previously indicated, responsibility for all of the voluminous litigation cannot be laid at her doorstep.

Our next question concerns the fee allowed to the attorney for the paternal heirs. He was allowed a fee of $16,000, apportioned in the same way as the other fees and costs. On Mrs. Skinner's appeal, she contends that no fee should have been allowed out of the estate, the fee that was allowed is excessive, and she should not have been required to pay sixty percent of the fee. The assignees of the interests of the maternal heirs, on their cross-appeal, maintain that no fee should have been allowed out of the estate. The paternal heirs, and their attorney, also have cross-appealed, asserting that the fee allowed is wholly inadequate, and should have been $40,000, and that all of the fee should have been charged against Mrs. Skinner's share of the estate.

The attorney for the paternal heirs maintains that his services benefited the entire estate, as distinguished from the personal interests of his own clients, in that he procured the setting aside of the probate of the forged will, he located the true legal heirs, and he successfully resisted Mrs. Skinner's extravagant claims against the estate. He claims that Mrs. Skinner is responsible for all this, and should be made to pay for his services.

When the settlement suit was brought, the attorney for the paternal heirs (Mr. Wilbur Fields) had contingent fee contracts with the four paternal heirs. One of the contracts called for a 25 percent fee, two of them for a 33⅓ percent fee, and one for such fee as the court should award. The circuit court, with respect to the latter contract, determined that a 33⅓ percent fee would be proper, so for the purposes of this opinion we will treat the latter contract as calling for a 33⅓ percent fee. Under these contracts Mr. Fields will receive around $12,000 in compensation from his clients.

At the time the proceeding to set aside the probate of the will was commenced, Mr. Fields represented only six persons who thought they were heirs of Mr. Skinner, but who turned out not to be. He had a contingent fee contract with them. Mrs. Skinner's answer in this proceeding disclosed the names of some of the real heirs, and the night before judgment was entered setting aside the probate of the will Mr. Fields made a contingent fee contract with one of them (Mrs. Lattin). This is the 25 percent contract above referred to. On the day judgment was entered setting aside the probate of the will Mrs. Lattin was made a party to the proceeding, so Mr. Fields at that time represented one party who had a valid interest in the estate.

One contention is that Mr. Fields is limited in his total compensation to the amount of the fees called for by his contingent fee contracts with the four paternal heirs, and cannot recover an additional amount out of the other shares in the estate. This contention finds some support in Pepper v. Pepper, Ky., 98 S.W. 1039, which held that under the statute (now KRS 412.070) an attorney was not entitled to a direct allowance out of an estate, but his client could *recover* out of the estate a portion of the attorney fees the client had incurred. However, the statute, KRS 412.070, was subsequently amended so that it now seems to authorize a direct allowance to the attorney, and in later cases it has been held that an allowance can be made to the attorney out of the estate, in addition to the fee payable under his contract with his

client. See Crutcher v. Elliston's Ex'rs, 299 Ky. 613, 186 S.W.2d 644.

■ Another contention is that Mr. Fields is not entitled to any compensation for his services in procuring the setting aside of the probate of the will, because substantially all of his services were rendered at a time when he did not represent anyone with a valid interest in the estate. However, it appears that the proceedings were commenced in good faith, in behalf of persons who were of some kinship to Mr. Skinner and whose claims of heirship were not completely baseless. Also, Mr. Fields did represent a real heir when the judgment was entered. And the simple fact is that his services did result in a substantial benefit to the estate, in that half of the estate of $190,000 was recovered for the heirs. So it is our opinion that Mr. Fields is entitled to some allowance for the services in setting the will aside.

■ As concerns the services rendered in connection with the settlement suit, the rule has been stated to be that no allowance of an attorney's fee should be made "unless the services rendered by the attorney were necessary and redounded to the benefit of the estate, either in accomplishing some purpose that could be done only by litigation, or other resulting benefits to be shared equally by its distributees." Gernert v. Liberty Nat. Bank & Trust Co., 284 Ky. 575, 145 S.W.2d 522, 524, 526.

In Johnson v. Ducobu, Ky., 258 S.W.2d 509, 510, the court said:

"We are unwilling to go so far as to announce an inflexible rule that direct benefit to the estate must invariably be shown to justify an allowance of costs, attorney fees, or expenses. We do conclude, however, that where no benefit is shown either to the estate or the other beneficiaries no such allowance should be made unless there appears some good reason for the filing of the suit. We think such a rule will protect estates from unnecessary and

fruitless litigation and at the same time prevent unreasonable delay on the part of the fiduciaries in the final distribution and settlement of estates."

In the Ducobu case no fee was allowed, because there was no showing of unreasonable delay on the part of the administrator in the settlement of the estate, and it appeared that the settlement suit was fruitless and wholly unnecessary.

We are not prepared to say that the settlement suit brought by Mr. Fields was wholly unnecessary and fruitless. However, it did accomplish very little that could not have been accomplished satisfactorily by the administrator. As concerns the resistance of Mrs. Skinner's claims against the estate, the administrator and its attorney were perfectly capable of protecting the interests of the estate, and were doing so very successfully at the time the settlement suit was brought. Likewise, as concerns the determination of heirs, it appears that the administrator was capable of handling the task, and very little assistance was rendered through the settlement suit. So, while we believe that some allowance of fees should be made for services in the settlement suit, no substantial allowance is warranted.

■ Since we have concluded that Mr. Fields is entitled to some fee payable out of the estate, the only questions that remain are as to the amount and apportionment of the fee. The net effect of the allowance by the circuit court, of $16,000 payable 60 percent out of the widow's share, 20 percent out of the maternal heirs' share, and 20 percent out of the paternal heirs' share, is that the widow would pay $9,600, the maternal heirs $3,200, and the paternal heirs $3,200.

We will say first that we think that any fee payable out of the share of the paternal heirs must be deducted from the amount of fee payable under Mr. Fields' contingent fee contracts with these heirs. We so interpret the contracts, and in any event Mr. Fields would not be entitled to recover from

his clients a fee greater than they agreed to pay him.

Taking into consideration all the circumstances, including the facts that the will was set aside summarily with practically no contest, that at the time the proceeding to set aside the will was commenced Mr. Fields did not represent anyone with a valid interest in the estate, and that there was not much necessity for the settlement suit, but on the other hand, the setting aside of the will did result in substantial benefit to the estate, and the settlement suit was not wholly fruitless and unnecessary, it is our opinion that a fee of $8,000 payable out of the estate, for Mr. Fields, is all that can be justified. If this fee is assessed in direct proportion to the shares of the various parties, it will mean that $4,000 is payable out of the widow's share, $2,000 out of the maternal heirs' share, and $2,000 out of the paternal heirs' share (this latter sum to be deducted, however, from the fee payable under Mr. Fields' contingent fee contracts with the paternal heirs)

There would be some authority for charging the widow's one-half share of the estate with more than one-half of the fee, because she propounded the forged will. See Russell and Merritt, Kentucky Practice-Probate Practice and Procedure, sec. 975, p. 114; 95 C.J.S. Wills § 567d, p. 663. However, it must be remembered that the widow did not receive any benefit from Mr. Fields' services in the settlement suit, and throughout the litigation she has been represented by her own counsel, at considerable expense. The requirement that she pay $4,000 out of her share of the estate, towards the fee of Mr. Fields, may be considered as the equivalent of charging her with the full cost of his services in setting aside the will.

Our conclusion is that Mr. Fields should be allowed out of the estate a fee of only $8,000, apportioned and credited as above indicated.

We next consider a question raised concerning a requirement that the distributees execute refunding bonds before receiving their distributable shares. The basic judgment determining the distributable shares was entered on October 11, 1956, and most of the appeals and cross-appeals hereinbefore discussed are from that judgment. However, supplemental orders were entered, on December and December 31, 1956, directing that the distributees execute refunding bonds as a condition of receiving distribution of their shares. The paternal heirs have appealed from these supplemental orders, contending, first, that these orders constituted an attempt by the court to amend the October 11 judgment. which under CR 59.05 the court could not do after the expiration of ten days; and, second, that since all debts and demands have been disposed of, there is no occasion to require refunding bonds.

We do not consider these orders as constituting invalid amendments of the October 11 judgment. By the very nature of probate proceedings, various orders and judgments are required to be entered at different stages of the proceedings. One order or judgment may be final, complete and appealable as concerns the matters it has disposed of, yet further matters may remain to be disposed of at a later stage of the proceedings. The statutes relating to refunding bonds, KRS 395.545 and 396.130, seem to contemplate that an order requiring such bonds may be entered whenever the personal representative reaches the point of making actual distribution.

This Court has held that a refunding bond may be required even though it does not appear at the time that there are any debts remaining against the estate. Wilkinson v. Rosser's Ex'r, Ky., 104 S.W. 1019, 31 Ky.Law Rep. 1262. Under the authority of the Wilkinson case, we think the court below had power to require the refunding bonds.

A final question remains with respect to that portion of the October 11

judgment that directs distribution of the shares of the maternal heirs to them "and their attorneys". The attorney who purported to represent the maternal heirs, W. Howard Clay, was employed initially by the United Research Company (a concern engaged in the business of locating "missing heirs"), to which the maternal heirs had executed partial assignments of their interests in the Skinner estate. One of the maternal heirs, Albert F. Ziegler, appeared personally in the proceedings below, and asserted that the assignment executed by him was champertous and therefore void, and that W. Howard Clay was not authorized to represent him as his attorney. Ziegler has appealed from the judgment to the extent that it may be construed to designate Clay as his attorney, and to the extent that it may be construed as validating the contract of assignment. None of the other maternal heirs have appealed; however, the paternal heirs, on their cross-appeal, question the validity of the assignment contract as it applies to all of the maternal heirs.

The paternal heirs are complete strangers to the assignment contract, and are not affected by its validity or invalidity; accordingly they have no right to question its validity. Aetna Life Insurance Company v. Weck, 163 Ky. 37, 173 S.W. 317. Therefore, we will consider only the questions raised by Ziegler, and the validity of the contract as it applies to him alone.

The contract of assignment between Ziegler and the United Research Company assigns twenty-five percent of Ziegler's share in the estate to the company, in consideration of it "having brought to my attention certain assets in which I may have an interest," and in consideration of "your further efforts and investigations to determine the extent thereof." The contract provides that the company is to act as Ziegler's agent and is authorized to employ counsel, but that all expenses, including attorney fees, are to be borne solely by the company.

This is a typical "heir-hunting" contract. The courts have almost uniformly refused to enforce such contracts. See Annotation, 171 A.L.R. 351. We think the contract clearly violates our statute against champerty and maintenance, KRS 372.060, and we hold it to be unenforceable.

Since Mr. Clay was employed by the assignees, and not by Mr. Ziegler, and since Mr. Ziegler rejected any representation of him by Mr. Clay, there is no basis for giving Mr. Clay any interest in or lien upon Mr. Ziegler's share of the estate.

Our final disposition of the various appeals and cross-appeals is as follows:

On the appeal of Mrs. Skinner from the order overruling her motion under CR 60.-02, to set aside the judgment invalidating the probate of the will, the judgment is affirmed.

On the appeals and cross-appeals from the judgment of October 11, 1956, in the consolidated second and third actions, the judgment is reversed to the extent that:

(1) It allows the administrator a fee in excess of five percent; with directions to enter judgment allowing a fee of only five percent.

(2) It provides for the allowance and apportionment of a fee of $16,000 for the attorney for the paternal heirs; with directions to enter judgment allowing him a fee of $8,000, of which $4,000 shall be charged against the widow's share, $2,000 against the maternal heirs' share, and $2,000 against the paternal heirs' share; the latter sum of $2,000 to be credited against the fee payable under that attorney's contracts with the paternal heirs.

(3) It directs that Mr. Ziegler's share be paid to him and his attorneys; with directions that judgment be entered providing for payment of Mr. Ziegler's share directly to him, without claim or lien by Mr. Clay or the purported assignees.

In all other respects the judgment of October 11, 1956, is affirmed.

The supplemental judgments of December 22 and December 31, with reference to the requirement of refunding bonds, are affirmed.