Argued April 22, affirmed October 30, petition for rehearing
denied November 25, 1959

## WRIGHT, Admt'r *v.* KROEGER
345 P. 2d 809

*Cecil Stickney,* Eugene, argued the cause for appellant. With him on the brief was George T. Langford, Eugene.

*Ben C. Flaxel,* North Bend, argued the cause for respondent. On the brief were Flaxel & Todd, North Bend.

Before ROSSMAN, Presiding Justice, and PERRY, SLOAN and CRAWFORD, Justices.

PERRY, J.

This is a suit for a declaratory judgment. The trial court entered a decree for the plaintiff from which the defendant appeals.

The defendant Roberta Kroeger, domiciled in the state of Oregon, prior to December 14, 1954, was married to one Allen Hasel. On that date, she obtained a decree of divorce from him. On April 23, 1955, less than six months from the entry of the decree, she went through a marriage ceremony in the state of Nevada with Paul Kroeger, also domiciled in the state of Oregon. Immediately following the marriage ceremony, the defendant and Paul Kroeger returned to the state of Oregon where they resided. Paul Kroeger died intestate later that same year, leaving an estate consisting of both real and personal property.

The question presented on this appeal is whether or not at the time of Paul Kroeger's death the defendant was his lawful widow and thus as his heir at law entitled to the estate of the deceased.

ORS 107.110 provides:

"(1) A decree declaring a marriage void or dissolved at the suit or claim of either party terminates the marriage as to both parties, except that neither party shall be capable of contracting marriage with a third person until the expiration of six months from the date of the decree or, if an appeal is taken, until the suit is determined on appeal, whichever is later.

"(2) If either party does so contract, he is liable therefor as if the decree had not been given."

■ A similar situation to this existed in the case of *In Re Estate of Ott,* 193 Or 262, 238 P2d 269. In that case, following prior decisions of this court, we held that a marriage was absolutely void which was celebrated in another state by a person domiciled in this state who was ineligible at the time to contract marriage by reason of the six months' provision of this statute.

The defendant has asked us to reconsider and reverse the holdings of our former opinions. We have re-examined our former holdings, but we decline to depart therefrom. The language of the statute using the words "neither party shall be capable of contracting marriage" clearly sets forth, as the public policy of this state, that persons under the prohibition of the statute are incapable of entering into the contract of marriage, and, therefore, being unable to contract the marriage, wherever performed, it is void ab initio. If it is thought the public policy should be more lenient to those who wish to remary in haste, it is for the legislature to decide, not the courts.

Subsequent to the presentation of this matter in the trial court and, of course, after the death of Paul Kroeger, the 1959 legislature amended ORS 107.150 to read as follows:

"(5) Any marriage in all other respects legal and regular, made prior to January 1, 1959, and before the expiration of six months from the date of a decree declaring a previous marriage of one or both of the contracting parties void or dissolved, hereby is declared valid; and any child conceived or born of such marriage shall be deemed legitimate." Oregon Laws 1959, ch 228(5), p. 315.

■ Under the law as it was in 1955, Roberta Kroeger would have taken nothing. Paul Kroeger's entire estate would have passed to his brothers and sisters as his heirs at law. If this interest was only an expectancy which did not vest on Paul Kroeger's death, then that expectancy might be divested by later legislative fiat. On the other hand, if the interest was a vested property interest, it is beyond the power of the legislature to divest the heirs in part or in whole by substituting others as heirs. *Horton v. Carter,* 253 Ala 325, 45 So2d 10; *Estate of Giordano,* 85 Cal App2d 588, 193 P2d 771; *Estate of Thramm,* 80 Cal App2d 756, 183 P2d 97; *Estate of Thornton,* 1 Cal2d 1, 33 P2d 1, 92 ALR 1343; *Estate of Wellings,* 197 Cal 189, 240 P 21; *Swartz v. Andrews,* 137 Iowa 261, 114 NW 888; *Canovaro v. Brothers of Order of Hermits of St. Augustine,* 326 Pa 76, 191 A 140; Michigan Legal Studies, Scurlock on Retroactive Legislation Affecting Interests in Land, p. 122.

■ Since this estate includes both real and personal property, the interest of the heirs in both must be considered. ORS 111.020 provides that "When any person dies seised of any real property, * * * such real property shall descend subject to his debts, expenses of administration and to being sold for the best interest of the estate or of the heirs, devisees or legatees or for the purposes of distribution, as follows * * *." Mr. Justice RAND had occasion to construe this section in *Leet v. Barr, et al.,* 104 Or 32, 56, 202 P 414, 206 P 548, wherein he stated:

> "Section 10125, Or. L., determines the persons to whom real property in this state shall descend. The word 'descend' has a well-defined legal meaning, and was used in this statute in that sense. As used in this statute it means the vesting of an estate in real property in the heir by operation of law immediately upon the death of the ancestor."

We came to a similar conclusion in *De Bow v. Wollenberg,* 52 Or 404, 432, 96 P 536, 97 P 717. There it was stated:

"The title to all realty, upon the death of its owner, passes directly to the heirs of the decedent as tenants in common, subject only to rights of the executor or administrator to possession for payment of debts."

Other cases holding that fee title passes to the heirs immediately upon death are *In Re McLeod's Estate,* 159 Or 687, 82 P2d 884; *Noon's Estate,* 49 Or 286, 291, 88 P 673, 90 P 673; *Stadelman v. Miner,* 83 Or 348, 155 P 708, 163 P 585, 163 P 983; *King v. Boyd,* 4 Or 326.

These statements demonstrate that ORS 111.020 does not change the common-law rule that the title to realty vests in the heirs the moment the decedent expires. Therefore, the brothers and sisters of Paul Kroeger took a vested interest in his realty at the time he died. The interest could not be divested by statute, so the defendant has no interest in the realty.

As to the personal property, the result is the same. For, while under the common law the legal title to the personalty of a decedent vested in his administrator at the time of his appointment, (II Woerner, The American Law of Administration, § 185 (3rd ed 1923); ORS 111.030; *McMahon v. Harney County Nat. Bank,* 104 Or 323, 206 P 224; *Thorsen v. Hooper,* 57 Or 75, 109 P 388), the administrator is entitled to no share in the distribution under the laws of succession, and takes no beneficial interest in the estate. He is but a quasi trustee, and the equitable interest resides in those to whom distribution is due. *Thorsen v. Hooper,* supra.

*In Re McLeod's Estate,* 159 Or 687, supra, addressed

itself to the question of whether or not this equitable interest is vested. McLeod died intestate, leaving Christina MacKenzie as next of kin. Before administration was completed, Christina died, leaving three daughters. The controversy was between the three daughters and cousins who would have been McLeod's next of kin if Christina had predeceased McLeod. The cousins argued that next of kin should be ascertained as of the date of distribution of the personal estate, rather than at the time of McLeod's death. The Court rejected this argument. In the text of the opinion (p. 696) we quoted from *Nickerson v. Bowly,* 8 Metc. (Mass) 424:

" 'It is a well established rule of law, that the right to a distributive share of personal estate, under the statute of distributions, is a vested interest, vesting, in point of right, at the time of the decease of the intestate, although the persons to take, and the amount to be received, must be ascertained and determined by a decree of the probate court; which, from various causes affecting the settlement of the estate, may not be made till long afterwards.' "

We also said (p. 696):

" * * * a right does vest at the time of the death 'to demand and receive at some time in the future whatever may remain after paying the debts and expenses.' "

The proposition that those entitled to distribution take a vested interest in the estate was accepted in the following cases: *State of Oregon v. Black,* 193 Or 295, 236 P2d 326; *In Re Estate of Felber,* 193 Or 231, 238 P2d 203, 31 ALR2d 231; *In Re Witherill's Estate,* 178 Or 253, 166 P2d 129.

■ There is another reason why the defendant cannot prevail. Paul Kroeger having died prior to the

enactment of the curative statute, there was no putative marriage relation then existing upon which the statute could act.

The judgment of the trial court is affirmed.

Neither party shall recover costs.