John DOE # 1–77; Jane Doe # 1–19, and all other Similarly–Situated, but as yet Unknown John Doe and Jane Doe Victims, as a Class, Appellants,

v.

GOLDEN & WALTERS, PLLC; J. Dale Golden; Eugene Goss; Mark David Goss; Fernandez Friedman Grossman & Kohn, PLLC; David A. Friedman; Robert E. Reeves; Reeves & Associates; Barry Lynn Demus, Jr.; Octavius Gillis; Christopher Andre Williams; Craig Johnson; David T. Jones; and John Doe Nos. 1–16, Appellees.

No. 2004–CA–000639–MR.

Court of Appeals of Kentucky.

Sept. 9, 2005.

See also 407 F.3d 755.

James M. Morris, Lexington, KY, for Appellant.

Guy R. Colson, Ellen Arvin Kennedy, Lexington, KY, for Appellees Golden & Walters, PLLC, and J. Dale Golden.

Calvin R. Fulkerson, Melanie S. Marrs, Lexington, KY, for Appellees Eugene Goss and Mark David Goss.

John M. Famularo, Alex L. Scutchfield, Lexington, KY, for Appellees Fernandez Friedman Grossman & Kohn, PLLC, and David A. Friedman.

Linda B. Sullivan, Lexington, KY, for Appellee Craig Johnson.

Before HENRY and MINTON, Judges; HUDDLESTON, Senior Judge.[1]

## OPINION

MINTON, Judge.

### I. INTRODUCTION.

This case arises out of a series of federal class actions filed in the United States District Court for the Eastern District of Kentucky: *Guy v. Lexington–Fayette Urban County Government*[2] (*Guy*); *Doe # 1–9 v. Miller*[3] (*Doe I*); *Doe # 1–33 v. Lexington–Fayette Urban County Government*[4] (*Doe II*); *Doe # 1–44 v. Lexington–Fayette Urban County Government*[5] (*Doe*

---

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Case no. 98–00431, filed October 15, 1998.

3. Case no. 00–00166, filed May 3, 2000.

4. Case no. 02–00439, filed September 25, 2002.

5. Case no. 03–00012, filed January 13, 2003.

*III* ); and *Doe v. Miller*.[6] Each was filed on behalf of the same class of plaintiffs, discussed below, and alleged civil rights violations by the Lexington–Fayette Urban County Government (LFUCG).[7] The instant case was filed as a class action case in Fayette Circuit Court, ostensibly by some or all of the named plaintiffs [8] of *Doe II* and *Doe III*.[9] The Appellants allege that they are members of the class of plaintiffs on whose behalf *Guy* and *Doe I* were filed. They brought this suit against the named plaintiffs of *Guy* and *Doe I*,[10] the named plaintiffs' attorneys,[11] and the attorneys' corresponding law firms [12] after the Appellants' claims against LFUCG were dismissed as time-barred in *Doe II* and *Doe III*. The Appellants allege that they would not have lost the opportunity to pursue their otherwise viable claims against LFUCG if not for certain acts and omissions committed by the Appellees during the litigation of *Guy* and *Doe I*. The Appellants have asserted claims for attorney malpractice (breach of duty based on attorney-client relationship), breach of fidu-ciary duty, and fraudulent misrepresentation.

The Appellants appeal from two orders of the trial court that had the combined effect of granting summary judgment in favor of each of the Appellees on all claims. After these summary judgment orders were issued and this appeal was filed, the United States Court of Appeals for the Sixth Circuit issued an opinion on May 5, 2005, in *Doe v. Lexington–Fayette Urban County Government (Doe v. LFUCG* ), a consolidated appeal of *Guy, Doe I, Doe II, Doe III*, and *Doe v. Miller*. Therefore, we also must consider the effect of this federal consolidated appeal on this matter.

We hold that the Fayette Circuit Court lacked subject matter jurisdiction of the instant case because it was filed prematurely before any of the causes of action asserted ever accrued. Accordingly, we reverse the trial court's summary judgment orders, which dismissed all of the claims against the Appellees, with prejudice; and we remand with instructions to

6. Case no. 00–00166. This shared case number suggests that this case was consolidated with *Doe I*, but this is not clear from the record. It is also unclear when *Doe v. Miller* was filed.

7. Some of the later federal class actions named additional defendants and additional causes of action, but the exact identity of these defendants or causes of action is not relevant for the purposes of this opinion.

8. In this opinion, the phrase "named plaintiffs" is used to distinguish any plaintiffs who are specifically identified in the pleadings as parties, even if only by a pseudonym, from the putative class members. All of the named plaintiffs in the instant case actually filed using John Doe or Jane Doe pseudonyms, as did the named plaintiffs in *Doe I, Doe II*, and *Doe III*.

9. *See Doe v. LFUCG*, 407 F.3d 755, 759–760 (6th Cir.2005), *filed* May 5, 2005, *petition for reh'g en banc filed* May 19, 2005, *reh'g en*

*banc denied* August 12, 2005. As of the writing of this opinion, the mandate had not been issued, meaning that *Doe v. LFUCG* was not yet final. *See infra* for details on how and why we have taken judicial notice of this opinion. We cannot independently verify whether the Appellants in the instant case are the named plaintiffs of *Doe II* and *Doe III* because of the use of pseudonyms. *See supra* n. 7.

10. This group of Appellees will be referred to as "the Plaintiff Appellees" when necessary to distinguish them from the other Appellees.

11. This group of Appellees will be referred to as "the Attorney Appellees" when necessary to distinguish them from the other Appellees.

12. The law firms appear to be included solely on the theory of *respondeat superior* based on the actions of the attorneys affiliated with these law firms. Because of our holding, we need not address the law firms separately.

dismiss these unripe claims, without prejudice. The Sixth Circuit's opinion in the consolidated appeal, *Doe v. LFUCG*, 407 F.3d 755 (C.A.6 2005) has no effect on our holding as it could not and did not resolve the Fayette Circuit Court's lack of subject matter jurisdiction in the instant case.

## II. BACKGROUND.

### A. Judicial Notice.

Any attempt to address the case at hand must begin with an understanding of the underlying federal class actions. However, the record before us is incomplete with regard to the procedural history of these federal cases. So, in the interest of judicial economy, we must resort to judicial notice to fill in the gaps in the chronology of the federal litigation.

The concept of judicial notice has been codified in Kentucky Rules of Evidence (KRE) 201. A court may take judicial notice *sua sponte*.[13] Moreover, "[j]udicial notice may be taken at any stage of the proceeding."[14] In his highly respected treatise on Kentucky evidence law, Professor Robert G. Lawson notes that this provision merely codified the common law of Kentucky which recognized the authority of an appellate court to take judicial notice of an appropriate fact.[15] This is consistent with language in the Kentucky Rules of Civil Procedure (CR) concerning what information must be included in the appendix of an appellate brief. CR 76.12(4)(c)(vii) creates an exception for "matters of which the appellate court may take judicial notice" to the general rule that materials and documents not in the record may not be introduced or used as exhibits in an appendix in support of an appellate brief. But Lawson warns that judicial notice should be used cautiously on appeal so as not to subvert the rules concerning preservation of error.[16]

KRE 201(b) states in relevant part that "[a] judicially noticed fact must be one not subject to reasonable dispute. . . ." One type of judicially noticed fact that is not subject to reasonable dispute is a fact "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."[17] Lawson provides helpful guidance regarding how KRE 201 should be interpreted with respect to taking judicial notice of court records. He writes that the critical inquiry is focused not "upon the general noticeability of court records" but, rather, "upon the noticeability of indisputable facts that happen to be verified by court records."[18] Lawson elaborates as follows:

> The propriety of taking notice in a given situation would depend first of all upon whether the fact in question is indisputable and secondly upon whether the fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." It is not critical that that fact is contained in a court record, but rather that it is capable of verification by resort to a readily available and accurate

---

13. *See* KRE 201(c) (stating that "[a] court may take judicial notice, whether requested or not.")

14. KRE 201(f).

15. Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 1.00[5][d], at 19 · (4th ed.2003) (citing as examples of this case law *Parkrite Auto Park, Inc. v. Shea*, 314 Ky. 520, 235 S.W.2d 986 (1950), and *White v. Crouch*, 280 Ky. 637, 133 S.W.2d 753 (1939)).

16. Lawson, § 1.00[5][d], at 19–20.

17. KRE 201(b)(2).

18. Lawson, § 1.00[4][b], at 15.

source of information (which just happens to be court records).[19]

◼ We take judicial notice of the content of the federal clerk's docket sheets for *Guy, Doe I, Doe II,* and *Doe III.* All of the information contained in these docket sheets is available through the Public Access to Court Electronic Records (PACER) database, which may be accessed via the internet.[20] Specifically, we take judicial notice of the chronology of dates of case events, the nature of these events, and the case status for each of these four federal cases as contained in the docket sheets.

We are cognizant that judicial notice should be used cautiously on appeal, but the noticed information is necessary to determine whether the Fayette Circuit Court had subject matter jurisdiction in the instant case. The noticed information is capable of accurate and ready determination through PACER or by obtaining the information from the federal clerk. And because the information in the docket sheets concerning the procedural history of *Guy, Doe I, Doe II,* and *Doe III* is controlled by the clerk of the United States District Court for the Eastern District of Kentucky, the accuracy of the information provided, such as the date a particular motion was filed or the date the federal district court denied certification, cannot reason-

ably be questioned. Therefore, the information contained in the docket sheets is a proper subject for judicial notice.

◼ The Court also takes judicial notice of the opinion issued on May 5, 2005, by the Sixth Circuit in *Doe v. LFUCG,* a consolidated appeal of *Guy, Doe I, Doe II, Doe III,* and *Doe v. Miller.* Because this federal appeal was decided after the trial court entered the summary judgments in the instant case, the parties had no opportunity to include it in the record. As is explained in detail below, the opinion in *Doe v. LFUCG* was not yet final as of the date this opinion was written. Ordinarily this would preclude us from citing this opinion. Nevertheless, we take judicial notice of it to consider whether its effect or potential effect on the four underlying federal class actions has any bearing on the ripeness of the claims in the instant case and the question of whether the trial court had subject matter jurisdiction over the instant case.[21] We do not seek to take notice of the propriety or correctness of the Sixth Circuit's decision but, rather, to take notice of the court's judicial act. Although not yet final, the fact of the Sixth Circuit's opinion in *Doe v. LFUCG* and its contents cannot reasonably be questioned. Moreover, this information is capable of ready determination as the opinion is avail-

---

**19.** *Id.* (parentheses in original) (footnote omitted).

**20.** PACER "is an electronic public access service that allows users to obtain case and docket information from Federal Appellate, District and Bankruptcy courts and from the U.S. Party/Case Index." http://pacer.psc.uscourts.gov/pacerdesc.html (last visited on August 16, 2005). PACER is a service of the United States Judiciary and is operated by the Administrative Office of the United States Court. *Id.* However, each federal court maintains its own database with case information. *Id.* Access to the United States District Court for the Eastern District of Kentucky may be

accessed by clicking a link at http://pacer.psc.uscourts.gov/cgi-bin/ links.pl# DCCTS (last visited on August 16, 2005) or by going directly to that Court's homepage for access to its electronic case filing (ECF)/PACER website at https://ecf.kyed.uscourts.gov/cgi-bin/login.pl (last visited August 16, 2005).

**21.** *Cf. Hocker v. Fisher,* 590 S.W.2d 342, 343 n. 1 (Ky.App.1979) (taking judicial notice of an opinion of the Kentucky Court of Appeals in another case because it stated a fact which was controlling in the matter before the Court, despite the fact that that case was unpublished and could not be cited).

able from the Sixth Circuit, the Federal Reporter,[22] and Westlaw.

## B. Procedural History.

### 1. *Guy.*

*Guy* was filed on October 15, 1998, by four named plaintiffs on behalf of themselves and a class of similarly-situated persons who were allegedly sexually abused as minors by Ron Berry through their involvement with Micro–City Government. Berry was the director of Micro–City Government, a nonprofit, community service program for disadvantaged youth[23] that was sponsored and funded, in part, by LFUCG. The action alleged that LFUCG violated the plaintiffs' civil rights because it continued to fund Micro–City Government, despite having knowledge that Berry was a sexual predator.

Before any ruling had been made on the issue of class certification, the named plaintiffs of *Guy* filed a joint motion with LFUCG to enter an agreed order of dismissal based on a tentative settlement agreement making no provisions for putative class members. Craig Johnson and David Jones, who were not named plaintiffs, then moved to be allowed to represent the putative class of plaintiffs. They also filed a motion seeking to require the district court to issue notice to the putative class members of any settlement or denial of certification. They later filed a motion to intervene and an intervening complaint.

On February 4, 2000, the district court entered an order approving the settlement of three of the four named plaintiffs with LFUCG and dismissing their claims

against LFUCG, with prejudice. The district court denied the joint motion of Johnson and Jones to intervene but noted that the statute of limitations remained tolled for them and for all putative class members of *Guy* until the denial of class certification or the dismissal of the case. After a hearing, the district court entered an order on February 28, 2000, rejecting a *pro se* motion by the fourth named plaintiff to disapprove the settlement. The order approved the settlement between LFUCG and the fourth named plaintiff and dismissed his claims against LFUCG.

Although there was no party left in the case to urge class certification, the district court ruled on that issue in an April 4, 2000, order. The district court found that the fact that additional putative class members had not presented themselves since the suit was filed in October 1998, despite considerable publicity surrounding the case, indicated that the class was likely not so numerous that joinder was impracticable, one of the prerequisites of a federal class action.[24] Further, the court ruled that notice to putative class members was not warranted because the class failed to meet the prerequisites for certification.

### 2. *Doe I.*

A second class action, *Doe I,* was filed on May 3, 2000, by a group of named plaintiffs, which ostensibly included Johnson and Jones,[25] who had been unable to intervene in *Guy.* Filed on behalf of the same class as *Guy, Doe I* also raised essentially the same civil rights claims against LFUCG. Before the district court

---

**22.** 407 F.3d 755.

**23.** *See Berry v. Commonwealth,* 84 S.W.3d 82, 84–85 (Ky.App.2001).

**24.** *See* Federal Rules of Civil Procedure (Fed. R.Civ.P.) 23(a).

**25.** *See Doe v. LFUCG,* 407 F.3d at 759. We cannot independently confirm that Johnson and Jones were among the named plaintiffs filing *Doe I,* however, because all of the named plaintiffs filed under pseudonyms.

had ruled on the issue of certification in *Doe I*, the named plaintiffs entered into a tentative settlement agreement with LFUCG making no provision for the putative class members. This agreement was expressly contingent on the denial of class certification. And on June 28, 2002, the trial court entered an order denying class certification, approving the settlement agreement, and dismissing the case. No notice was given to the putative class members of the denial of certification or of the settlement.

### 3. *Doe II.*

The third class action, *Doe II*, was filed on September 25, 2002, by a group of named plaintiffs on behalf of the same class as *Guy* and *Doe I*. *Doe II* also raised civil rights claims against LFUCG. The district court denied class certification, holding that the plaintiffs of *Doe II* were collaterally estopped from relitigating the merits of class certification based on the denial of certification in *Doe I*. On April 25, 2003, the district court dismissed as time-barred all the claims of all of the named plaintiffs except for one *Doe II* plaintiff. Some of the claims of the remaining named *Doe II* plaintiff were also dismissed at that time as time-barred. Ultimately, the remaining claims of the remaining plaintiffs were dismissed as time-barred on August 22, 2003.

### 4. *Doe III.*

*Doe III* was filed against LFUCG on January 13, 2003, by a group of named plaintiffs on behalf of the same class as the three previous cases. On November 21, 2003, the federal district court ruled that the plaintiffs' claims in *Doe III* were time-barred.

### 5. *Doe v. Miller.*

According to the Sixth Circuit's opinion in *Doe v. LFUCG*, the named Appellants of *Doe III* also filed another related case: *Doe v. Miller.*[26] *Doe v. Miller* is slightly different in focus from the earlier cases. The plaintiffs of *Doe v. Miller* sought to intervene in *Guy* and *Doe I* under Fed. R.Civ.P. 60(b)(4), alleging that the lack of notice to the putative class members of those cases violated due process and rendered those judgments void.[27] These claims were purportedly rejected by the district court in an October 7, 2002, order.[28]

### 6. The Instant Case.

The instant case was filed as a class action in Fayette Circuit Court on June 27, 2003, after most of the claims in *Doe II* had been dismissed by the federal district court as time-barred but before the claims in *Doe III* were dismissed. Before the trial court could address the issue of certification, it ruled on the motions that resulted in the summary judgments now on appeal.

On February 24, 2004, the trial court granted the joint motion of Attorney Appellees Mark David Goss and Eugene Goss for summary judgment. The trial court ruled that any duty owed by Mark David Goss to the putative class ceased to exist when he was permitted to withdraw as counsel of record for the class. It further held that Eugene Goss never owed a duty to the putative class members because his only role in either *Guy* or *Doe I* was representing the interest of a single plaintiff in *Doe I*, John Doe #18. Eugene

---

**26.** *See id.* at 760; *see id.* at n. 6.

**27.** *Id.*

**28.** *Id.*

Goss never purported to represent the class.

On March 1, 2004, the trial court granted the motions of each of the remaining Attorney Appellees to dismiss the claims against them for failure to state a claim upon which relief may be granted. In the absence of any clear precedent, the trial court expressed a reluctance to extend the concept of an attorney-client relationship to include a relationship between the attorneys filing a class action and the putative class members that exists before certification of the class or after the denial of certification. But the trial court also ruled that the Appellants could not make a claim for attorney malpractice because, even absent the Appellees' alleged malpractice, the Appellants would not have prevailed in the underlying actions. The trial court based this decision, in part, on the federal district court's rulings in *Guy, Doe I, Doe II,* and *Doe III.* Because the trial court considered evidence beyond the pleadings in rendering its decision, this decision must be considered a summary judgment.[29]

The March 1, 2004, order also granted the motion of Plaintiff Appellee Craig Johnson for a judgment on the pleadings on the ground that any fiduciary duty that he might have owed to the putative class members ceased when the federal district court denied certification. None of the other Plaintiff Appellees, none of whom are represented by counsel, filed a motion for judgment on the pleadings. Nevertheless, the trial court granted judgment on the pleadings to each of the remaining Plaintiff Appellees because it found that the ruling regarding Johnson also extended to these Appellees as a matter of law. The trial court considered evidence outside of the pleadings in rendering its decisions with regard to the remaining Attorney Appellees and Plaintiff Appellee Johnson and the other Plaintiff Appellees. For the reasons noted above, we must consider that the trial court actually granted summary judgment in favor of each of these Appellees, notwithstanding the terminology used by the trial court. The Appellants filed a timely appeal of both the March 1, 2004, order and the February 24, 2004, order.

### 7. *Doe v. LFUCG.*

On May 5, 2005, the United States Court of Appeals for the Sixth Circuit issued its opinion in *Doe v. LFUCG,*[30] which addressed the outstanding appeals of *Guy, Doe I, Doe II, Doe III,* and the attempt by some or all of the Appellants to intervene in *Guy* and *Doe I.* These cases were before the Sixth Circuit in various procedural postures; some involved direct appeals, while others involved appeals from orders denying post-judgment motions for relief. One of the matters addressed was whether the judgments in *Guy* and *Doe I* should be vacated under Fed.R.Civ.P. 60(b)(4).[31] The Sixth Circuit held that the district court had abused its discretion in both cases by failing to notify putative class members of the denial of certification because, under the specific circumstances, the putative class members were likely to be prejudiced.[32] Nevertheless, the Sixth Circuit declined to vacate the judgment in

**29.** CR 12.03.

**30.** 407 F.3d 755.

**31.** *Id.* at 761.

**32.** *Id.* at 763–764. The Court noted that prejudice was likely in *Guy* and *Doe I* because there was reason to believe that there were a large number of absent or putative potential class members. It also noted that the notoriety of these cases made it more likely that a putative class member might have heard about the class action and suit and relied upon it to protect his rights. *Id.*

*Doe I* because the settlement agreement between the named plaintiffs and LFUCG was expressly contingent on the dismissal of the class action.[33] But the settlement agreement in *Guy* was not contingent on the dismissal of the class action. The Sixth Circuit vacated the district court's order in *Guy* that had dismissed the class action and approved the settlement agreement. This allowed the Sixth Circuit to reach "the equitable result of allowing the [putative class members] to go forward with their case while preserving the settlement reached by the *Doe I* parties." [34] The court also made it clear that upon remand, the district court must decide anew the issue of class certification in *Guy* on the merits.[35] On May 19, 2005, petitions were filed with the Sixth Circuit for an en banc rehearing in *Guy, Doe I, Doe II,* and *Doe III.* These petitions were denied on August 12, 2005. But as of the date this opinion was written, the mandate had not yet been issued; and *Doe v. LFUCG* was not yet final.[36]

Because the opinion of *Doe v. LFUCG* was filed after the deadline for appellate briefing in the case at hand, the parties were granted the opportunity to file supplemental briefs to address the effect of the opinion in the consolidated federal appeal on this appeal. The parties also had the opportunity to address *Doe v. LFUCG* at oral argument.

## III. ANALYSIS.

### A. Nature of Damages.

The Appellants have asserted that the Appellees committed the following acts or omissions during the litigation of *Guy* and *Doe I:* falsely representing that they would protect the interests of the putative class members, entering into settlement agreements with LFUCG that benefited only the named plaintiffs, failing to push for certification or acquiescing with LFUCG's motion to deny certification, and failing to give notice to the putative class members of the denial of certification. The Appellants have asserted three causes of action against the Appellees: legal malpractice (based on breach of attorney-client relationship), breach of fiduciary duty, and fraudulent misrepresentation. Each of these causes of action is predicated on the existence of cognizable damages or injury.[37] And for each of the causes of action raised in the instant case, the same damages are asserted by the Appellants. The Appellants allege that they were injured because the Appellees' acts and omissions rendered the Appellants unable to participate in *Guy* and *Doe I,* leaving the Appellants without a remedy for their otherwise viable claims against LFUCG when these claims later were deemed time-barred in *Doe II* and *Doe III.* The injury asserted by the Appellants is the lost opportunity to pursue their otherwise viable claims.

---

**33.** *Id.* at 765.

**34.** *Id.* at 764 (italics in original).

**35.** *Id.* at 767.

**36.** See *infra* for an explanation of the role of the mandate as it relates to the finality of a decision by the Sixth Circuit.

**37.** *Marrs v. Kelly,* 95 S.W.3d 856, 860 (Ky. 2003) (stating as one of the elements of a claim for legal malpractice that the client has

suffered an injury proximately caused by the attorney's negligent conduct); *Sparks v. Re/Max Allstar Realty, Inc.,* 55 S.W.3d 343, 348 n. 15 (Ky.App.2000) (setting forth as an element of a claim for breach of fiduciary duty the requirement that the plaintiff has suffered an injury caused by the breach of duty); *Wahba v. Don Corlett Motors, Inc.,* 573 S.W.2d 357, 359 (Ky.App.1978) (stating as an element of a claim of fraudulent misrepresentation that the misrepresentation has caused injury).

## B. Ripeness.

 The issue of ripeness was never raised by the parties or the trial court. But ripeness is an element of a justiciable claim. Section 112(5) of the Kentucky Constitution states in relevant part that "[t]he Circuit Court shall have original jurisdiction of all justiciable causes not vested in some other court." Questions that may never arise or are purely advisory or hypothetical do not establish a justiciable controversy.[38] Because an unripe claim is not justiciable,[39] the circuit court has no subject matter jurisdiction over it.[40] It is well-established that the issue of subject matter jurisdiction can be raised at any time, even *sua sponte*,[41] as it cannot be acquired by waiver, consent, or estoppel.[42]

As discussed below, the ripeness of the Appellants' claims depends on whether their damages asserted are fixed and non-speculative. Because the Appellants have asserted the same damages for all three causes of action, these damages would become fixed and non-speculative for all three causes of action at the same time. The damages asserted by the Appellants supporting all of their claims—the lost opportunity to pursue their otherwise viable claims against LFUCG—are the type of damages commonly asserted in legal malpractice actions. So we will analyze the ripeness issue as it relates to the Appellants' legal malpractice claim for the sake of convenience. But if the Appellants' legal malpractice claim is unripe because the damages are not fixed, this would also apply to the Appellants' claims for breach of fiduciary duty and fraudulent misrepresentation that rest on the same damages.

## C. Accrual of Cause of Action for Legal Malpractice.

 Because statutes of limitations are based on the accrual of a cause of action, they begin to run from the time the cause of action comes into existence.[43] To determine when or if a cause of action for legal malpractice accrued in the instant case, we look to the relevant statute of limitations, KRS 413.245. KRS 413.245 states, in relevant part, that an action for professional services negligence "shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured." This statute has been construed as establishing "actually two separate statutes of limitations: one, a statute limiting to 'one year from the date of occurrence,' and then a second statute providing a limit of 'one year ... from the date when the cause of action was, or reasonably should have been, discovered by the party injured,' if that date is later in time."[44]

---

38. *Curry v. Coyne*, 992 S.W.2d 858, 860 (Ky. App.1998).

39. *See id.*

40. *See* Ky. Const. § 112(5). *Cf. Anderson v. Cabinet for Human Resources*, 917 S.W.2d 581, 583–584 (Ky.App.1996) (reversing a decision of the circuit court that held that the appellant's right to judicial review of a decision by the Cabinet had expired and remanding the case back to the Cabinet for further administrative proceedings on the ground that the appellant's right to judicial review "has never ripened into justiciability" because the Cabinet had never given the appellant notice of his right to appeal its decision as specifically required by an administrative regulation).

41. *Commonwealth Health Corp. v. Croslin*, 920 S.W.2d 46, 47 (Ky.1996).

42. *Id., Duncan v. O'Nan*, 451 S.W.2d 626, 631 (Ky.1970).

43. *Caudill v. Arnett*, 481 S.W.2d 668, 669 (Ky.1972).

44. *Michels v. Sklavos*, 869 S.W.2d 728, 730 (Ky.1994) (internal quotations, including ellipsis, as in original).

■ "Occurrence" has been construed as synonymous with "cause of action" in KRS 413.245 based on the statutory language.[45] Moreover, the Kentucky Supreme Court has cited, with approval, the following statutory construction by a federal court: " '[T]he use of the word "occurrence" in KRS 413.245 indicates a legislative policy that there should be some definable, readily ascertainable event which triggers the statute.' "[46] This triggering event is "the date of 'irrevocable non-speculative injury.' "[47] The statute of limitations for legal malpractice does not begin to run "[u]ntil the legal harm [becomes] fixed and non-speculative[.]"[48]

■ The discovery provision of KRS 413.245 does not come into play if a suit for legal malpractice was filed within one year from the date of occurrence.[49] Logically, a party may not "discover" a cause of action that does not yet exist.[50] Any other interpretation of KRS 413.245 would allow the statute of limitations to begin running and possibly even expire before a cause of action for legal malpractice has accrued, which is the function of a statute of repose not a statute of limitations.[51]

■ This raises the question of when the damages for legal malpractice become fixed and non-speculative. One type of negligent conduct on which a legal malpractice claim might be based is litigation negligence, which has been described as "the attorney's negligence in the preparation and presentation of a litigated claim resulting in the failure of an otherwise valid claim[.]"[52] When a claim for legal malpractice is based on litigation negligence, whether the attorney's negligence has caused any injury or damages necessarily is contingent on the final outcome of the underlying case.[53] Any alleged injury is merely speculative until the result of the appeal of the underlying litigation is final and the trial court's judgment becomes "the unalterable law of the case."[54] A panel of this Court has even held that any damages allegedly suffered as a result of a legal malpractice claim did not become fixed and non-speculative until the Kentucky Supreme Court denied discretionary review of the underlying case in which the malpractice allegedly occurred.[55] But a post-judgment motion for relief under Rule 60.02 of the Kentucky Rules for Civil Procedure (CR) does not affect the finality of an appeal.[56] The fact that a client may have learned of the attorney's allegedly negligent conduct before the final adverse determination of the underlying claim on appeal cannot trigger the running of the statute of limitations until the cause of

45. *Id.*

46. *Id.* (quoting *Northwestern National Insurance Co. v. Osborne*, 610 F.Supp. 126, 128 (D.C.Ky. [E.D. Ky.] 1985)) (quotation as in *Michels*, including internal quotation marks and brackets).

47. *Id.* (quoting *Osborne*, 610 F.Supp. at 128).

48. *Alagia, Day, Trautwein & Smith v. Broadbent*, 882 S.W.2d 121, 125–126 (Ky.1994).

49. *Michels*, 869 S.W.2d at 730.

50. *Hibbard v. Taylor*, 837 S.W.2d 500, 501 (Ky.1992). *Cf. Stephens v. Denison*, 64 S.W.3d 297, 299–300 (Ky.App.2001).

51. *Michels*, 869 S.W.2d at 730.

52. *Id.*

53. *Michels*, 869 S.W.2d at 730; *Hibbard*, 837 S.W.2d at 501–502.

54. *Hibbard*, 837 S.W.2d at 502. This holding of *Hibbard* was reaffirmed in *Michels*, 869 S.W.2d at 733.

55. *Barker v. Miller*, 918 S.W.2d 749, 751 (Ky. App.1996).

56. *Faris v. Stone*, 103 S.W.3d 1, 4–5 (Ky. 2003)

action has accrued.[57] And without legally cognizable damages, there is no ripe claim for legal malpractice.[58]

KRS 413.245 seems to demonstrate the public policy balancing the interest in protecting persons who have been injured by attorney malpractice with the interest in allowing parties an opportunity to seek mitigation of damages in the underlying claim and leaving the malpractice claim open until that underlying claim is resolved. This is especially important because it is theoretically possible in a claim for attorney malpractice for a party to be fully restored to the position that he occupied before the negligent act or omission.[59] In such a case, the malpractice claim would fail for lack of damages.[60]

### D. Finality of Sixth Circuit Opinion.

Because the cases on which the Appellants' claims for damages are based are federal cases, we must consider when an appeal before the Sixth Circuit is final. It is final when the mandate is issued. As explained by the Sixth Circuit Internal Operating Procedures (6th Cir. I.O.P.) 41(a), "[t]he mandate is the document by which this Court relinquishes jurisdiction and authorizes the originating district court ... to enforce the judgment of this Court." Ordinarily the mandate would issue 21 days after the entry of a judgment by the Sixth Circuit.[61] But the timely filing of a petition for rehearing en banc "stays the mandate until disposition of the petition or motion, unless the court orders otherwise."[62] If the petition for rehearing en banc is denied, the mandate would normally issue seven days after the order denying the petition.[63] However, according to Fed.R.Civ.P. 60(b), filing a post-judgment motion for relief based on that provision "does not affect the finality of a judgment or suspend its operation."

### E. Accrual of the Appellants' Cause of Action for Malpractice.

The alleged acts or omissions of the Attorney Appellees' on which the Ap-

---

**57.** *Michels,* 869 S.W.2d at 731.

**58.** *Meade County Bank v. Wheatley,* 910 S.W.2d 233, 234–235 (Ky.1995).

**59.** *See, e.g., Mitchell v. Transamerica Insurance Co.,* 551 S.W.2d 586 (Ky.App.1977) (holding that Appellants, who settled a personal injury claim filed in federal court in Indiana, failed to establish any damages in a malpractice claim against their original attorney who had earlier let the Kentucky statute of limitations expire on this personal injury claim because they could not show that they received less damages than if they had been allowed to pursue their claim in a Kentucky court). *But see, e.g., Goff v. Justice,* 120 S.W.3d 716 (Ky.App.2002) (holding that ultimate settlement of Appellants' medical malpractice claim after attorney's withdrawal from action did not bar Appellants' legal malpractice claim against attorney where the attorney's allegedly negligent actions had resulted in court orders severely limiting the clients' presentation of expert witness testimony and had resulted in the dismissal of two

defendants from the medical malpractice case). The fact pattern of the instant case illustrates the very harm sought to be avoided by requiring finality of the underlying case before recognizing a cause of action for legal malpractice based on litigation negligence. Because of the lack of subject matter jurisdiction, we take no position on whether the Sixth Circuit's reopening of *Guy* places the Appellants back in the same situation that they would have been in if not for the alleged negligence of the Appellees, as in *Mitchell,* or if they still suffered some injury, as in *Goff.* But it appears that the reopening of *Guy* would certainly affect the damages potentially recoverable by the Appellants if they proved to have any otherwise viable claims.

**60.** *Mitchell,* 551 S.W.2d at 588.

**61.** 6th Cir. I.O.P. 41(a).

**62.** Federal Rules of Appellate Procedure (Fed. R.App.P.) 41(d)(1).

**63.** Fed.R.App.P. 41(b), 6 Cir. I.O.P. 41(b).

pellants' legal malpractice claims are based occurred in the litigation of *Guy* and *Doe I*: falsely representing that they would protect the interests of the putative class members; entering into settlement agreements with LFUCG that benefited only the named plaintiffs; failing to push for class certification or acquiescing to LFUCG's motion to deny certification; and failing to give notice to the putative class members of the denial of certification. Although these are perhaps atypical of the types of negligent acts or omissions on which most legal malpractice claims are based,[64] they, nevertheless, fall within the category of litigation negligence.[65]

The instant case presents a unique issue. The Appellants allege that the Appellees' negligent acts or omissions occurred during the litigation of *Guy* and *Doe I*. But nothing occurring in these suits necessarily foreclosed the Appellants' claims against LFUCG or harmed the Appellants in any way. It was only after the Appellants learned in *Doe II* and *Doe III*, respectively, that their causes of action against LFUCG were deemed time-barred that the Appellants' lost their opportunity to pursue these claims that they allege were otherwise valid. This is the injury on which the Appellants' malpractice claim is based.

The named plaintiffs of *Doe II* filed an appeal on September 18, 2003, of multiple orders, including the district court's orders denying class certification and granting summary judgment against most of the named plaintiffs on the ground that their claims were time-barred. And the named plaintiffs of *Doe III* filed an appeal on December 4, 2003, of the order which granted summary judgment against them on the ground that their claims were time-barred. A legal malpractice claim by the Appellants who were involved in *Doe II* based on their lost ability to pursue their claims against LFUCG could not have accrued until the appellate court affirmed the dismissal of those claims as time-barred. Similarly, the legal malpractice claim by the Appellants whose claims were dismissed as time-barred in *Doe III* could not have accrued until the appellate court affirmed the dismissal of their claims. Until these appeals were final and the dismissal of the Appellants' claims against LFUCG was the unalterable law of the case, the Appellants' damages for the alleged legal malpractice were speculative.[66] The mere knowledge or belief by the Appellants that the Appellees' acted negligently is not enough to trigger the running of the statute of limitations for legal malpractice until the damages are fixed and non-speculative.[67]

Two of the matters before the Sixth Circuit in *Doe v. LFUCG* were the direct appeals of the orders dismissing the claims in *Doe II* and *Doe III*, respectively, as time-barred. The Sixth Circuit's opinion in *Doe v. LFUCG* was not issued until May 5, 2005; and the case is still not final because the mandate has not been issued.[68]

---

**64.** We take no position on whether these acts can rise to negligence because this depends, in part, on whether the Appellees owed any duty of care to the Appellants, a question which we do not address in this opinion.

**65.** *Cf. Stephens,* 64 S.W.3d at 300 (holding that despite the fact that malpractice allegation based on failure to communicate a plea offer "does not fit precisely within the definition of 'litigation negligence' as defined in

*Michels,* nevertheless, it is inescapable that the same principle applies." (quotation marks and italics in original)).

**66.** *Hibbard,* 837 S.W.2d at 502.

**67.** *Michels,* 869 S.W.2d at 731.

**68.** *See* 6th Cir. I.O.P. 41(a). The mandate was stayed most recently by the filing on August 19, 2005, of a petition to stay its issuance.

The instant case was filed on June 27, 2003, long before the direct appeals of *Doe II* or *Doe III* were final. The injury on which the Appellants' legal malpractice claim is based is the Appellants' lost opportunity to pursue their otherwise valid claims against LFUCG after these claims were deemed time-barred in *Doe II* and *Doe III*. Until the Sixth Circuit issued a final opinion or opinions affirming the district court's orders dismissing the named plaintiffs' claims in *Doe II* and *Doe III*, the Appellants' damages were merely speculative. The Appellants had not definitively lost their rights to pursue their claims against LFUCG. Therefore, no cause of action for legal malpractice had accrued at the time the instant case was filed in the Fayette Circuit Court.

The previous analysis has addressed the accrual of the cause of action for the Appellants' legal malpractice claim only. But, as previously noted, damages are an element of each of the three claims asserted by the Appellants.[69] And the Appellants asserted the same damages for each of their causes of action. Therefore, if the Appellants' cause of action for legal malpractice had not accrued when the instant case was filed because the damages were not yet fixed and non-speculative,[70] then the Appellants' causes of action for breach of fiduciary duty and fraudulent misrepresentation also must not have accrued for the same reason. None of the claims asserted by the Appellants could accrue before *Doe II* and *Doe III* were affirmed on appeal. Yet the Appellants filed the instant case long before that occurred. No-

tably, when the trial court issued the summary judgments on appeal, the causes of action still had not accrued.

## F. Prematurely Filed Cause of Action.

We are faced with the question of what to do with a case which was filed before any cause of action accrued. We note that this is not simply a prematurely filed appeal. Instead, this is a case in which the very complaint was filed before the asserted causes of action accrued.

In *Lilly v. O'Brien*,[71] Kentucky's highest court was faced with an election contest case that was filed before the final action of the county board of election commissioners, the event triggering the statutory right to contest an election.[72] The right to contest an election is purely a creation of statute.[73] Therefore, the statute must be strictly followed because it grants the court subject matter jurisdiction where it otherwise has none.[74]

The cause of action eventually accrued when the county board of election commissioners took its final action, which occurred after the action was filed but before the trial court ruled on the case.[75] An amended petition was filed after the cause of action accrued.[76] The premature filing of the action was not raised at the trial court level.[77] The appellate court had to address whether the failure to raise the issue below waived it, whether any jurisdictional defect in the prematurely filed case was cured by the subsequent accrual of the cause of action before the trial court

**69.** *See supra* n. 37.

**70.** *Hibbard,* 837 S.W.2d at 502.

**71.** 224 Ky. 474, 6 S.W.2d 715 (Ky.1928).

**72.** *Id.* at 717–718.

**73.** *Id.*

**74.** *Id.* at 718.

**75.** *Id.*

**76.** *Id.*

**77.** *Id.* at 719.

ruled on the issue, or whether the amended petition which was filed after the cause of action accrued related back to the original complaint, curing any jurisdictional defect in the premature filing.[78]

▮▮ The Court held in *Lilly* that the fact "that no cause of action had accrued or existed when the suit was commenced cannot be aided by amendment, or waived by delay in calling attention to it."[79] It also rejected the idea that the subsequent accrual of the cause of action before the trial court ruled on the case could cure the defect of a complaint filed before a cause of action ever accrues and before subject matter jurisdiction attached. The Court stated that "the nonexistence of a cause of action when the suit was started is a fatal defect[.]"[80] The *Lilly* Court ultimately ruled that the prematurely-filed case should be dismissed without prejudice.[81]

Two other Kentucky cases have reached a different conclusion on whether the issue of prematurity can be waived: *Farmers National Bank of Danville v. First Colored Baptist Church of Danville*[82] and *Skinner v. Morrow*,[83] which followed the holding of *Farmers National Bank of Danville*. In both cases, the creditor of a decedent filed suit to settle the estate before six months had elapsed from the time of the personal representative's appointment, despite the fact that by statute, only the personal representative is authorized to file such a suit during that time period.[84] The Court held in *Farmers National Bank of Danville* that the issue of prematurity was waived because it was not raised before the trial court.[85] Moreover, the Court held that only the representative could raise the issue.[86]

We find these two cases involving the premature filing of claim against the estate by someone other than a personal representative to be distinguishable from *Lilly* in that these two cases, unlike *Lilly*, do not involve subject matter jurisdiction. The rule regarding when a claim can be filed against the estate by someone other than a personal representative appears to be procedural in nature, akin to a statute of limitations. It does not convey the right to bring a claim against the estate since that right already exists. It merely restricts when that right may be exercised.

▮▮ The instant case involves a question of subject matter jurisdiction as in *Lilly*. The circuit court has jurisdiction over justiciable claims.[87] An unripe claim is not justiciable.[88] Because the Appellants' claims were filed before they were

---

78. *Id.* at 718–719.

79. *Id.* at 719 (citations omitted).

80. *Id.*

81. *Id. See also Broyles v. Commonwealth*, 309 Ky. 837, 219 S.W.2d 52, 54 (Ky.1949) (holding that case for usurpation of office should be dismissed, without prejudice, because it was filed before the alleged-usurped ever assumed office and "[t]he later assumption of the office and the amendment of the petition thereafter could not give life to the premature petition").

82. 277 Ky. 521, 126 S.W.2d 1130 (Ky.1939).

83. 318 S.W.2d 419 (Ky.1958). Although decided after *Lilly*, the Court made no reference to *Lilly* in this opinion.

84. *Farmers National Bank of Danville*, 126 S.W.2d at 1132. The relevant statute at this time was Section 428 of the Civil Code of Practice. *Id.; Skinner*, 318 S.W.2d at 423–424. The relevant statute at this time was KRS 395.510. *Id.* at 424.

85. 126 S.W.2d at 1132–1133.

86. *Id., Skinner*, 318 S.W.2d at 424.

87. Ky. Const. § 112(5).

88. *Curry*, 992 S.W.2d at 860.

ripe, the circuit court has no jurisdiction over the instant case. Following the precedent established in *Lilly,* the Appellants' claims should have been dismissed, without prejudice, for lack of subject matter jurisdiction.

## IV. DISPOSITION.

For the reasons discussed in this opinion, we reverse the summary judgment orders; and we remand this case to the Fayette Circuit Court with direction to dismiss the case, without prejudice.

ALL CONCUR.