RENDERED:  JUNE 23, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0547-MR

RONNIE B. FIELDS, JR.                                            APPELLANT

APPEAL FROM CHRISTIAN CIRCUIT COURT
v.               HONORABLE ANDREW SELF, JUDGE
ACTION NO. 20-CI-00191

CITY OF HOPKINSVILLE                                            APPELLEE

OPINION
REVERSING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND CETRULO, JUDGES.

ACREE, JUDGE:  Appellant, Ronnie Fields, Jr. appeals the Christian Circuit

Court's grant of summary judgment in favor of Appellee, City of Hopkinsville.

Appellant's complaint alleged the governing authorities of Appellee failed to fulfill

a ministerial duty to protect burial grounds within the Hopkinsville corporate limits

in violation of KRS[1] 381.690.  Having reviewed the record, we conclude there are genuine issues of material fact whether Appellee's governing authorities, defendants below, are performing that ministerial duty; therefore, we reverse the summary judgment.

## BACKGROUND

On February 28, 2020, Fields initiated this lawsuit against the City of Hopkinsville alleging the city maintains a road traversing known but unmarked graves in the Riverside Cemetery.[2]  Appellant alleges one of the graves belongs to John Wesley Long, his direct lineal ancestor.  (Record (R.) 1).[3]

Long served as a Confederate soldier in the American Civil War and died in Hopkinsville after various diseases spread through his camp.  (R. 85).  Soldiers surviving the outbreak buried Long, and approximately 226 others, in the Riverside Cemetery from December 1861 to February 1862.  (Meacham's

---

[1] Kentucky Revised Statutes.

[2] The Riverside Cemetery lies within the city limits of Hopkinsville.

[3] Whether Fields, in fact, descended from Long is not at issue in this appeal.  Under Kentucky's division of statutory and constitutional standing, if Fields were not related to Long then he might be presumed to lack statutory standing under KRS 381.690 to bring this lawsuit.  We emphasize it is statutory standing and not constitutional standing Fields would lack.  *See Cabinet for Health & Fam. Servs. v. Sexton*, 566 S.W.3d 185 (Ky. 2018) for the distinction between statutory and constitutional standing.  Relevant here, statutory standing is an affirmative defense, waived if not properly raised by the defendant pursuant to Kentucky Rules of Civil Procedure 8.  *Harrison v. Leach*, 323 S.W.3d 702, 706 (Ky. 2010).  Because Appellees did not properly raise statutory standing in this appeal, this Court need not further address Field's claim of ancestral relationship, other than to take the allegations of the complaint as a disputed question of fact.

Deposition at 15). Those who buried the dead did not mark the graves. To commemorate them, in 1888, the city of Hopkinsville exhumed the remains of approximately 101 soldiers from the cemetery and reinterred them beneath a memorial statue. The city dedicated the statue to the "Unknown Confederate Dead." At the time, the city did not know approximately 126 graves remained which had not been relocated.

In 1899, eleven years after memorializing the unknown 101 soldiers, a "Mr. Gant" discovered a memorandum notebook hidden away in a desk at the Bank of Hopkinsville. (R. 11). The Daily Kentucky New Era published the contents of the notebook, which purportedly belonged to George "Cotton Gin" Anderson. (R. 9-11). Per the article, the notebook contained the names of each person buried and the precise location of his respective grave. (R. 11). Anderson detailed twelve rows of buried soldiers and, pertinent here, Anderson lists "Jno W Long, 3rd Miss, Feb 19, '62" as being buried in row eleven. (R. 11). Without evidentiary basis, Appellee challenges the trustworthiness of the May 1899 publication, but archeologist William Meacham verified the accuracy of part of the list in 2015.

Meacham is an archeologist who spent his career working for the Chinese government in Hong Kong preserving items of antiquity. (Meacham Deposition at 8-9). Meacham first became aware of the Riverside Cemetery and

the unmarked graves after he buried his father there in 1999 and saw the 1888 memorial. Meacham's research of the monument and the history of the Confederate burials convinced him he could find the remaining 126 graves. Additionally, he too discovered he descended from one of the soldiers buried in the unmarked graves. (Meacham Deposition at 12).

In 2015, the city issued Meacham a permit to conduct exploratory digs based on the information in the Anderson notebook. This dig lasted about twelve days and Meacham positively identified graves in rows one through five and rows eight and nine listed in the notebook. (Meacham Deposition at 23). Rows eight and nine lie approximately four and a half meters from the road in question. (R. 15, 26-27). Following the patterns of discovered graves, Meacham and Fields draw the inference that graves listed in rows eleven and twelve lie underneath the road. (R. 13). Meacham expressed his own belief, based on his expertise and professional experience as an archaeologist, that there is nearly 100 percent certainty the graves are underneath the road. (Meacham Deposition at 40, 69).

The most notable discovery during Meacham's dig was an iron coffin found when Meacham excavated row 4. (R. 81). The coffin had a nameplate that, once Meacham removed and cleaned it, bore the name Anderson recorded in his notebook for the specific plot where Meacham found it. (R. 81). This discovery allowed Meacham to positively identify the other remains found. This discovery

further serves as the basis for Meacham's expectation and inference that the graves comprising rows eleven and twelve lie underneath the road.

Eventually, the city revoked Meacham's permit to excavate graves. Appellee alleges revocation was based on its interpretation of the permit and its conclusion that removing the coffin and other items of antiquity from the graves violated its scope. A fair reading of the record does not support this interpretation. In fact, Meacham immediately informed the city he discovered the coffin and that he removed it shortly afterward, explaining why he did so.[4] However, it was not until years later that the city first characterized his handling of the coffin as a basis for revoking his permit.

Appellant filed a complaint that, fairly construed in the context of notice pleading, alleges the Appellee's maintenance of a road over unmarked graves violates the city's duty imposed by KRS 381.690.[5] The statute, entitled "Protection of burial grounds by cities," says in its entirety:

> Whenever any burial grounds lie within the corporate limits of a city the governing authorities of the city shall protect the burial grounds from being used for dumping grounds, building sites, playgrounds, places of entertainment and amusement, public parks, athletic fields or parking grounds.

---

[4] His excavation and discoveries drummed up attention and press coverage that created the potential for graverobbers to loot for other artifacts.

[5] Fields's complaint does not cite KRS 381.690, but the language used in the complaint is taken, verbatim, from the statute.

KRS 381.690.

In his prayer for relief, Appellant specifically sought a "Temporary Restraining Order restraining [Appellee] from using the section of the road in question running through the cemetery immediately [and] until further expert excavation can be done" and that Meacham be allowed to "conduct the proper excavation to identify the unmarked graves[.]"[6]  Appellee answered the complaint and asserted a variety of defenses.

After a little less than a year of discovery, Appellee filed a motion for summary judgment, re-characterizing Appellant's claim as a petition for a writ of mandamus, and arguing it "must be dismissed as he can only compel public officials to act, not a municipality."  (Memorandum in Support of Motion for Summary Judgment, R. 88) (citing *City of Pineville v. Helton*, 188 S.W.2d 101 (Ky. 1945)).  The motion alternatively argued:  (1) Appellee "does not have a duty to act"; (2) Appellant "does not have a legal right to the relief he requests"; and (3) Appellant "does not meet the criteria for an easement to an unmarked gravesite in an unknown location."  (R. 89).

---

[6] The prayer for relief also sought all further relief to which Appellant establishes entitlement. Appellant does not argue for reversal of the circuit court's judgment to the extent it denies the relief sought of Meacham's continued archaeological pursuits at the cemetery.

Appellant responded to the motion for summary judgment, but also filed a motion to amend the complaint to add, as defendants, the Mayor, City Grounds Maintenance Superintendent, and Public Works Director (hereafter, the individual defendants). (R. 259).

The circuit court granted Appellant's motion to amend the complaint. Then, the court granted the motion for summary judgment, stating (1) "[a] writ of mandamus is not a viable cause of action against [Appellee]" and there is no legal basis to justify mandating the individual defendants to order excavation activity in the cemetery; (2) Appellee "has not violated any duty . . . imposed by KRS 381.690 . . . "; and (3) Appellant "does not have an easement to an unmarked, unidentified gravesite in an unknown location." (R. 289-90).

Appellant filed a notice of appeal but named only the City of Hopkinsville as an appellee. Our review thus proceeds.

## ANALYSIS

On appeal, we must answer two questions. First, because some of the circuit court's reasons for dismissing the complaint are based solely in law, implicitly presuming the truth of the complaint's allegations without the need to look beyond the pleadings, we must determine whether the circuit court's legal conclusions are correct regarding the legal viability of Appellant's claim. This is, in effect, a determination whether the complaint states a claim upon which relief

can be granted.  *See* CR[7] 12.02(f).  If so, we will proceed to the second question and determine whether the record indicates there are no genuine issues of material fact such that Appellee would be entitled to judgment as a matter of law.  *See* CR 56.03.

Before turning to the merits of this appeal, however, we must address two preliminary questions.  First, what is the effect of failing to name the individual defendants in the notice of appeal?  Second, should this Court grant Appellee's motion to strike Fields' brief?  We answer these questions in that order.

"A notice of appeal, when filed, transfers jurisdiction of the case from the circuit court to the appellate court.  It places the named parties in the jurisdiction of the appellate court. . . .  Therefore, the notice of appeal transfer[s] jurisdiction to the Court of Appeals of only the named parties."  *City of Devondale v. Stallings*, 795 S.W.2d 954, 957 (Ky. 1990).  "This Court has no jurisdiction relative to persons not named as parties to the appeal."  *Watkins v. Fannin*, 278 S.W.3d 637, 640 (Ky. App. 2009); *see also Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 270 (Ky. App. 2005) (footnotes omitted) (The matter of jurisdiction is an issue we are required to raise *sua sponte*, "as it cannot be acquired by waiver, consent, or estoppel.").

---

[7] Kentucky Rules of Civil Procedure.

However, our Supreme Court has applied the doctrine of substantial compliance to cure a party's failure to expressly name certain parties. *Lassiter v. American Express Travel Related Services Co., Inc.*, 308 S.W.3d 714, 718 (Ky. 2010) ("except for tardy appeals and the naming of indispensible parties, we follow a rule of substantial compliance in regards to notices of appeal"). In *Lassiter*, the Supreme Court addressed the appellant's failure to expressly name a state agency head in the notice of appeal. It first noted that *Kentucky v. Graham,* 473 U.S. 159, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985), says "the naming of the agency head in his official capacity in a lawsuit is the functional equivalent of naming the agency itself." *Lassiter*, 308 S.W.3d at 719. "By the same process of reasoning," our Supreme Court continued, "the converse must likewise be recognized, and that the naming of an agency to a lawsuit is equally the functional equivalent of naming the agency's head in his official capacity." *Id.* Application of the *Graham/Lassiter* doctrine was later expanded.

In *Flick v. Estate of Wittich*, the Supreme Court considered whether "naming 'The Estate of Christina Wittich' is the functional equivalent of naming the co-administrators and substantially complies with CR 73.03 by providing notice to the co-administrators." 396 S.W.3d 816, 820 (Ky. 2013). The Court concluded "that in the context of providing notice of an appeal, the official/agency relationship in *Lassiter* is analogous to the relationship between administrator and

estate. Given the comparative nature of these legal relationships, we find compelling reasons to apply the *Lassiter* holding to the case at bar." *Id.*

The *Graham/Lassiter* doctrine appears not yet to have been applied in the context of a municipality and its "governing authorities" (to use the language of KRS 381.690). However, "[b]y the same process of reasoning," *Lassiter*, 308 S.W.3d at 719, this Court does not see how it would not apply. Without question, Appellee's governing authorities received notice of the appeal and have not been prejudiced by a failure to name them expressly. Therefore, we proceed as if there are no unnamed indispensable parties.

Next, we address Appellee's motion to strike Fields' brief.

Pursuant to RAP[8] 32(A)(4),[9] appellants are required to include a brief statement at the beginning of their argument section explaining how they preserved their arguments for appeal. RAP 32(A)(4); *Hallis v. Hallis*, 328 S.W.3d 694, 695-96 (Ky. App. 2010). Failure to include a preservation statement may be grounds for sanctions. RAP 31(H). Appellee is correct that Appellant failed to include a preservation statement; nevertheless, this failure does not warrant such sanctions here.

---

[8] Kentucky Rules of Appellate Procedure.

[9] At the time the parties filed their briefs, briefing requirements were contained in CR 76.12. The Rules of Appellate Procedure became effective January 1, 2023 and now control. As the rules did not substantially change the Court will cite to the RAP.

The purpose of a preservation statement is "so that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration." *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012). For purposes of this appeal, "[w]e are convinced that the failure to comply with the rule is not fatal . . . where the propriety of summary disposition was clearly joined at every stage of the proceeding." *Cornette v. Holiday Inn Express*, 32 S.W.3d 106, 109 (Ky. App. 2000). Appellant properly challenged the motion for summary judgment to preserve an appeal of the circuit court's ruling on that motion. We emphasize, however, failure to substantially comply with the rules justifies striking a brief. *See Stowe v. Realco LLC*, 551 S.W.3d 462, 465 (Ky. App. 2018). We strongly encourage Appellant to include a preservation statement in his brief in the future, regardless of how obvious it is that an appeal is properly preserved.

We now turn to the merits.

There is a sequential relationship between CR 12.02 and CR 56. Relief under the first rule typically is pursued before or at the beginning of discovery while relief under the latter typically is pursued at cessation of discovery. If a complaint's allegations, which are presumed true, would establish liability if proven, the case proceeds. Discovery, among other purposes, tests the possibility of refuting the presumption of the allegations' truth. If discovery

effectually eliminates the possibility that one or more of the allegations necessary to establish the claim is true, there is no need for a factfinding, whether by jury or judge, and the judge need only make a legal decision. In more familiar terms, if discovery eliminates all genuine dispute regarding even one material fact necessary to the plaintiff's cause of action, the defendant will be entitled to judgment as a matter of law.

With this analytical foundation, we begin by assessing the correctness of the circuit court's first legal ruling – that Appellant's complaint seeks a writ of mandamus. We agree that if Appellant sought such relief, it would be unavailable. But we disagree with the circuit court's premise – Appellant did not seek such relief.

A writ of mandamus is an "extraordinary remedy which compels the performance of a ministerial act or mandatory duty where there is a clear legal right or no adequate remedy at law." *Cnty. of Harlan v. Appalachian Reg'l Healthcare, Inc.*, 85 S.W.3d 607, 613 (Ky. 2002). "A writ of mandamus is granted for only two purposes: (1) when the *lower court* is acting beyond its jurisdiction; and (2) when the *lower court* is acting or is about to act erroneously, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted." *Sowders v. Lewis*, 241 S.W.3d 319, 321-22 (Ky. 2007) (emphasis added).

Appellant did not seek a writ of mandamus. The complaint clearly seeks injunctive relief to prevent Appellee from violating KRS 381.690 by alleging Appellee has a duty to protect his ancestor's gravesite. Two forms of relief are available. The rule that allows it is CR 65.01.

"A party may obtain injunctive relief in the circuit court by (a) restraining order, (b) temporary injunction, or (c) permanent injunction in a final judgment." CR 65.01. Appellant expressly sought relief available under CR 65.01(a), but his prayer for relief also asked for "such other and further relief as to which they may be entitled." (R. 3). This would include relief available pursuant to CR 65.01(b) and (c).

Furthermore, CR 65.01 states that although "[a] restraining order shall only restrict the doing of an act[, a]n injunction may restrict or mandatorily direct the doing of an act." CR 65.01. Appellant's complaint sought to restrict Appellee's conduct he believes violates KRS 381.690 (allowing parking or driving over graves), and to have the circuit court mandatorily direct Appellees' doing of an act he believes necessary to comply with the statute (allowing Meacham to excavate graves located under the roadway).

To be entitled to such relief, Appellant first must establish a duty imposed upon Appellee. Appellee argued in its motion for summary judgment that it "does not have a duty to act" under KRS 381.690. (R. 89). We disagree.

When interpreting a statute, "[t]he legislature's intention 'shall be effectuated, even at the expense of the letter of the law.'" *Cosby v. Commonwealth*, 147 S.W.3d 56, 59 (Ky. 2004) (quoting *Commonwealth v. Rosenfield Bros. & Co.*, 80 S.W. 1178, 1180 (Ky. 1904)). We are convinced the legislature intended to impose upon every Kentucky city the duty that it "shall protect the burial grounds" within its corporate limits. KRS 381.690. Our caselaw repeatedly emphasizes the mandatory nature of this word "shall." "'[T]he term "shall" is a word of command and . . . must be given a compulsory meaning.' . . . Shall means shall." *Vandertoll v. Commonwealth*, 110 S.W.3d 789, 795-96 (Ky. 2003) (quoting BLACK'S LAW DICTIONARY 1233 (5th ed. 1979)). "'Shall' does not mean 'may' but is mandatory." *Fayette County Educ. Ass'n v. Hardy*, 626 S.W.2d 217, 220 (Ky. App. 1980).

This is not a case requiring semantic contortion to reach a conclusion about what a statute means. *Cf. Commonwealth Dept. of Agriculture v. Vinson*, 30 S.W.3d 162, 171 (Ky. 2000) (Johnstone, J., concurring in part and dissenting in part) (claiming majority opinion "contorts the language of the statute."). Appellee's duty is plain on the face of KRS 381.690.

The circuit court did not say whether such duty exists, but only that Appellee "has not violated any duty . . . imposed by KRS 381.690 . . . ." (R. 289-90). This holding declares there was no breach, not that there was no duty. If by

this statement the circuit court intended to agree with Appellee that there was no duty to violate, we reverse the ruling.

Even if the circuit court agrees there is a duty, we must still reverse if the circuit court weighed evidence in reaching its conclusion that Appellee did not "violate[] any duty . . . ."  Obviously, that is a question of fact.  *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003) ("Breach and injury, are questions of fact for the jury to decide.").

Proof of breach requires evidentiary support for specific material facts unique to every claim.  In this case, Appellant first needs to establish the location of the burial grounds he believes Appellee is failing to protect.  The record is replete with evidence of graves under a roadway in the cemetery and under the land contiguous to the road, all of which is within Appellee's corporate limits. There is thus a genuine issue, at least, regarding this material fact.

Next, is it a fact that the land above the alleged burial grounds is being used as parking grounds?  The record includes evidence that the topography and location of the alleged burial grounds are conducive to use as parking grounds and there is some evidence of such actual use.  There is thus a genuine issue regarding this material fact.

Then, of course, a question of fact exists whether Appellee has undertaken any action to satisfy the duty imposed by KRS 381.690.  Appellant

argues it has not; Appellee claims, without evidentiary support, that it and the individual defendants "complied with their duty to protect Riverside Cemetery from being used for dumping grounds, building sites, playgrounds, places of entertainment and amusement, public parks, athletic fields, or parking grounds." However, Appellee makes no representation as to how this duty has been satisfied. There is thus a genuine issue regarding this material fact.

"It is a sound public policy to protect the burying place of the dead." *Cave Hill Cemetery Co. v. Gosnell*, 161 S.W. 980, 983 (Ky. 1913). The statute, KRS 381.690, "sets out a clear public policy which prevents the use of burial grounds for purposes which are unrelated to burial of the dead." *AT&T Wireless PSC, Inc. v. City of Independence*, 63 S.W.3d 609, 613 (Ky. App. 2001).

The pleadings indicate Appellant has stated claims upon which relief can be granted. To the extent the judgment indicates otherwise, it is reversed. That leads us next to whether summary judgment for Appellees is justified based on the circuit court's conclusion there was no genuine issue of material fact of Appellees' breach.

A circuit court properly grants summary judgment "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." CR 56.03. "An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exist[ed] and the moving party was entitled to judgment as a matter of law." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018).

Thus, appellate courts engage in *de novo* review when reviewing a circuit court's order granting summary judgment. *Cmty. Fin. Servs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019). However, summary judgment "is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).

At issue here is whether the city currently violates KRS 381.690 by maintaining a road over unmarked graves. Thus far, *AT&T Wireless*, *supra*, is the only case in our jurisprudence interpreting the language of KRS 381.690.

In *AT&T Wireless*, this court determined building a satellite tower on land set aside for burial purposes would violate KRS 381.690. 63 S.W.3d at 613-14. This is because of the prohibition against buildings on burial grounds not associated with purposes for burying the dead. *Id.* AT&T argued the statute does not require the city to take affirmative action to protect burial grounds, but instead, KRS 381.690 requires cities to merely prohibit the enumerated uses. *Id.* at 613. This court rejected that argument, stating: "[KRS 381.690] sets out a clear public

-17-

policy which prevents the use of burial grounds for purposes which are unrelated to burial of the dead." *Id.* (citing *Cave Hill Cemetery Co. v. Gosnell*, 161 S.W. 980, 983 (Ky. 1913). Hence, "[a]s a general rule, cemetery grounds may be used for uses or purposes which are related to the cemetery's purposes." *Id.*

Accordingly, KRS 381.690 requires cities to take affirmative action to protect known burial grounds from the improper uses listed in KRS 381.690. Appellee is incorrect in suggesting there is no affirmative duty on the city's part to act. Appellee advances the same argument AT&T made in *AT&T*, which this Court rejected in that case, and does so again in this case.

While maintaining roads through a cemetery is more than arguably a valid purpose related to a cemetery's proper operation, it is equally arguable that maintaining a road over graves is not. KRS 381.690. One of the purposes of cemeteries is to respect and honor the dead; it is difficult to perceive how allowing vehicles to drive over and park upon graves is consistent with the respect due. The question of whether graves are, in fact, underneath the road illuminates why this case was not appropriate for summary judgment – in that, unquestionably, Appellant has at least established there is a genuine issue of a material fact – the existence of graves under the roadway.

When Appellee made its motion for summary judgment, it carried a burden to show no genuine issue as to any material fact existed. CR 56.03. To

-18-

carry this burden, the rule requires movants to utilize the record to support showing why no genuine issue of material facts exists. Appellee fails to do so here. Appellee claims because Meacham is not *absolutely* positive Long's grave lies underneath the road, it is practically impossible for Appellant to win as a matter of law. Appellant, Meacham, and the record, which we construe in Appellant's favor, show nothing to cast doubt on the evidence Appellant presents of the existence of these graves, much less to eliminate the dispute over the question.

The City of Hopkinsville failed to carry its burden to show the evidence eliminates genuine issues of sufficient material facts to justify judgment in its favor as a matter of law. The circuit court erred when it granted summary judgment anyway.

## **CONCLUSION**

For the reasons stated, we reverse the Christian Circuit Court's April 26, 2021 Final Order and Judgment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jacob P. Mathis
Clarksville, Tennessee

BRIEF FOR APPELLEE:

James A. Sigler
James P. Landry
Paducah, Kentucky

H. Douglas Willen
Hopkinsville, Kentucky